1  David Barron, Esq.
   Nevada Bar No. 0142
2  Chelsea Pyasetskyy, Esq.
   Nevada Bar No. 11688
3  **BARRON & PRUITT, LLP**
   3890 West Ann Rd.
4  North Las Vegas, Nevada 89031
   Telephone: 702-870-3940
5  Facsimile:  702-870-3950
   Email:  dbarron@lvnvlaw.com
6  cpyasetskyy@lvnvlaw.com
   *Counsel for United Artists*
7  *Theatre Circuit, Inc.*

8                 **UNITED STATES DISTRICT COURT**

9                    **CLARK COUNTY, NEVADA**

10                              ***

11  THOMAS JACKSON, an Individual,
    CAROL JACKSON, an Individual,
12                                      Case No.:   2:10-CV-00050-LDG-GWF

13              Plaintiffs,

14  v.                                   **MOTION FOR SANCTIONS**

15  UNITED ARTISTS THEATRE CIRCUIT,
    INC., a Maryland Corporation doing
16  business as UA RAINBOW
    PROMENADE; DOES I through X,
17  inclusive and ROE CORPORATIONS XI-
    XX, inclusive
18
              Defendants.
19

20          Defendant United Artists, by and through its attorneys, Barron & Pruitt, LLP, submits its

21  Motion for Sanctions.  Defendant requests sanctions for Plaintiffs' failure to produce a

22  computation of damages during the course of discovery; failure to provide any method or formula

23  used to calculate over $13,000,000 in claimed damages; failure to produce a single medical

24  record or bill until six months *after* the close of discovery; failure to disclose many alleged

25  treatment providers until months after the close of discovery; Plaintiffs' egregious conduct of

26  deposing one of Defendant's former managers after discovery closed, without leave of Court, and

27  for using said deposition as evidence in this proceeding; Plaintiffs' submission of a sham affidavit

28

BARRON & PRUITT, LLP
ATTORNEYS AT LAW
3890 WEST ANN RD.
NORTH LAS VEGAS, NEVADA 89031
TELEPHONE (702) 870-3940
FACSIMILE (702) 870-3950

in bad faith; and Plaintiffs' complete disregard and violation of this Court's Scheduling Orders. The Motion is supported by the attached Memorandum of Points and Authorities, the records and files in this matter, and on any oral argument the Court may consider at any hearing of this motion.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.      STATEMENT OF FACTS

As the Court will recall, this case arises out of an alleged slip-and-fall in Defendant's movie theater on February 29, 2008. Plaintiff Carol Jackson asserted in her Complaint that Defendant United Artists' negligence caused her to slip and fall on a foreign substance, resulting in injuries. In addition, Plaintiff Thomas Jackson brought a claim for loss of consortium.

The parties held the Early Case Conference pursuant FRCP 26 on February 15, 2010. Based on representations that Plaintiff Carol Jackson had treated with approximately thirty medical providers and was continuing to treat, the parties agreed to an extended discovery period of 270 days.

In their initial disclosure, served February 17, 2010, Plaintiffs identified a number of medical records and bills from 28 different medical facilities—but rather than producing any records, stated the records "would be produced".[1] Plaintiffs also did not include a computation of damages pursuant FRCP 26(a)(1)(A) for either Carol or Thomas Jackson.

On March 11, 2010, Defendant served Interrogatories, Requests for Production of Documents, and Requests for Admission on Plaintiffs. Included in this discovery, Defendant requested Plaintiffs produce all medical records pertaining to any care of Carol Jackson for the previous ten years[2]; any documents for which Carol Jackson would base future medical costs[3]; and an account of all losses and expenses[4]. However, when Plaintiffs responded on May 12, 2010—after three months of discovery—Plaintiffs still did not produce any medical records or a computation of damages. Instead, Plaintiffs claimed they did not have any records responsive to

---

[1] Plaintiffs' Initial Disclosures, attached as Exhibit A.

[2] *See* Plaintiff Carol Jackson's Responses to Requests for Production, Request No. 2 attached as Exhibit B.

[3] *See* Plaintiff Carol Jackson's Responses to Requests for Production, Request for Production No. 3.

[4] *See* Plaintiff Carol Jackson's Answers to Defendants Interrogatories, Interrogatory No. 16, attached as Exhibit C.

- 2 -

BARRON & PRUITT, LLP
ATTORNEYS AT LAW
3890 WEST ANN RD.
NORTH LAS VEGAS, NEVADA 89031
TELEPHONE (702) 870-3940
FACSIMILE (702) 870-3950

BARRON & PRUITT, LLP
ATTORNEYS AT LAW
3890 WEST ANN RD.
NORTH LAS VEGAS, NEVADA 89031
TELEPHONE (702) 870-3940
FACSIMILE (702) 870-3950

1    Defendant's requests, but they would supplement the responses if they obtained additional

2    information. Plaintiffs have not supplemented their discovery responses to date. Plaintiffs also

3    never provided a computation of damages for Carol Jackson during the course of discovery.

4         Likewise, Defendant requested Thomas Jackson to produce any documents to support his

5    loss of consortium claim and all documents in which he would rely to establish a loss of

6    consortium, companionship, comfort and society claims. [5] Plaintiffs responded that the only

7    document they had that was responsive was Thomas Jackson's sworn responses to Defendant's

8    Interrogatories. Plaintiffs have never produced any records in support of Mr. Jackson's loss of

9    consortium claims, nor did they produce any computation of damages for Mr. Jackson during the

10   course of discovery.

11        On December 17, 2010, Plaintiffs disclosed Dr. Jan Janzen as an expert. In his expert

12   report, Dr. Janzen stated that he reviewed a number of documents from various providers that had

13   not been named in Plaintiffs' Initial Disclosures and whose records had not been produced. [6]

14   Plaintiffs never produced any of the medical records supposedly reviewed by Dr. Janzen during

15   the course of discovery.

16        On October 5, 2010, the parties stipulated to extend the discovery cut-off to February 14,

17   2011. Throughout discovery, Plaintiffs failed to produce a single document and they waited until

18   the day discovery closed to issue their first supplement to their FRCP 26(a) disclosures. [7] On

19   February 14, 2011, Plaintiff's supplemented their disclosures to add as witnesses various

20   insurance company investigators and the "Usher who took photographs of accident scene with

21   Brad Greene, address unknown, c/o Defendant United Artists." Plaintiffs also updated their list of

22   documents to include the "investigatory notes, tapes, and related items obtained from Brad

23   Greene, investigator for Liberty Mutual (to be provided when received)." No medical records or

24   bills were produced and no computation of damages was provided.

25

26   ---

     [5] *See* Plaintiff Thomas Jackson's Responses to Defendant's Requests for Production of Documents, Nos. 2 and 3,
27   attached as Exhibit D.
     [6] Dr. Janzen Expert Report, attached as Exhibit E, p. 1.
28   [7] Plaintiffs' First Supplemental Disclosure, attached as Exhibit F.

1        Prior to and following the close of discovery, Plaintiffs filed numerous motions to extend

2    the discovery deadlines in order to try to obtain Defendant's employees recorded statements—

3    even though they were never requested during discovery—and to depose the cleaning company

4    Master Janitorial—despite having known about them since as early as September 28, 2010.[8]

5    However, Plaintiffs never requested a discovery extension on the grounds that they needed to

6    depose Defendant's former manager Archie Gatbonton, nor did they request additional time to

7    obtain medical records or information to compile a computation of damages.

8        On June 7, 2011—nine months after discovery closed—Plaintiffs served their Second

9    Supplemental Disclosure pursuant FRCP 26(a)(1), producing a single page—a letter from Carol

10   Jackson's treatment provider Dr. Jaswinder Grover dated January 25, 2011—even though

11   Plaintiffs had yet to produce a single record or bill from Dr. Grover.[9] The letter stated that Carol

12   Jackson had a "complex spinal pathology," multiple sclerosis, and was disabled, but made no

13   connection between Carol Jackson's medical conditions and her alleged February 29, 2008 fall. In

14   fact, the letter did not even mention the alleged fall. Although this letter was written over two

15   weeks prior to the close of discovery, Plaintiffs have offered no explanation why they waited over

16   four months to produce it.

17       On June 30, 2011, in support of Plaintiffs' Opposition to Defendants' Motion in Limine to

18   Exclude Plaintiffs' Expert Neil Opfer (#64), Plaintiffs' Countermotion for Partial Summary

19   Judgment (#67), and Plaintiffs' Opposition to Defendant's Motion for Summary Judgment (#69),

20   Plaintiffs submitted an Affidavit of Plaintiff Thomas Jackson that directly contradicted Mr.

21   Jackson's earlier testimony.[10] During his deposition on July 20, 2010, Mr. Jackson was advised

22   that if he needed clarification of a question, to ask for the question to be rephrased. He was

23

24   [8] *See* Plaintiffs' Motion to Extend filed January 4, 2011 (#25); Plaintiffs' Countermotion to Extend Discovery (#39), filed February 15, 2011; Plaintiffs' Emergency Motion for Limited Extension of time in which to Subpoena Master

25   Janitorial (#48), filed March 14, 2011; and Plaintiffs' Second Emergency Motion for Limited Extension of Time (#51) filed March 29, 2011.

26   [9] Plaintiffs' Second Supplemental Disclosure, attached as Exhibit G. Interestingly, after Defendant received the disclosure, it subpoenaed Dr. Grover's records. However, the records received on July 11, 2011 did not contain the

27   January 25, 2011 letter; thus, even with a subpoena, Defendant could not independently obtain this letter.

     [10] Thomas Jackson's deposition was previously produced as Exhibit F of Defendant's Motion for Summary judgment
28   (#61)

BARRON & PRUITT, LLP
ATTORNEYS AT LAW
3890 WEST ANN RD.
NORTH LAS VEGAS, NEVADA 89031
TELEPHONE (702) 870-3940
FACSIMILE (702) 870-3950

1  further advised that if he answered the question and did not ask for clarification, it would be

2  assumed that he understood the question.[11] Additionally, during the deposition, Mr. Jackson took

3  the opportunity to clarify some of his Interrogatory answers that were not correct.[12]

4          Mr. Jackson testified that immediately following Mrs. Jackson's fall he did not observe

5  anything on the floor.[13] As the Court may recall, after the alleged slip and fall, the Jacksons

6  stayed in the movie theater and watched the rest of the movie. Approximately two and a half

7  hours later, the Jacksons reported the incident to Defendant's managers. Defendant's managers

8  accompanied Mr. Jackson into the theater and he pointed to the area where Mrs. Jackson

9  allegedly fell.  When asked whether he saw anything on the floor when Defendant's employees

10 were inspecting the area, Mr. Jackson unequivocally testified that he did not see anything.[14] Mr.

11 Jackson was insistent that he did not see anything, and despite him clarifying other incorrect

12 statements on the record, Mr. Jackson made no attempt to clarify his testimony that he did not see

13 anything on the floor.

14         In direct contradiction of this earlier testimony, Mr. Jackson's Affidavit states:

15              I did not notice any substance on the floor until it was pointed out to me
               by Defendant's employees. After the substance was pointed out, I was
16              able to see it.

17 Thomas Jackson Affidavit, Document 69-6.  As discussed in detail in Defendant's Reply to

18 Plaintiffs' Opposition to Defendant's Motion for Summary Judgment (#74), this affidavit was

19 submitted in "bad faith" in response to a Rule 56 motion to try to create a triable issue of fact. *See*

20 Document 74, p. 13-16.

21         In response to Defendant's Motion for Summary Judgment (# 61), Plaintiffs filed in

22 support of their Opposition an "examination under oath" (EUO) of Mr. Gatbonton—taken on July

23 6, 2011, the day before Plaintiffs filed their Opposition. Mr. Gatbonton is one of Defendant's

24 former managers and is deaf. Despite Plaintiffs attempting to get around the discovery rules by

25

---

26 [11] Deposition of Thomas Jackson, 4:11-19.

27 [12] Deposition of Thomas Jackson, 25:18-25; 26:1-17.

   [13] Deposition of Thomas Jackson, 19:18-25; 20:1.

28 [14] Deposition of Thomas Jackson, 23:23-25; 24:1-12.

BARRON & PRUITT, LLP
ATTORNEYS AT LAW
3890 WEST ANN RD.
NORTH LAS VEGAS, NEVADA 89031
TELEPHONE (702) 870-3940
FACSIMILE (702) 870-3950

labeling Mr. Gatbonton's examination a EUO,[15] it was a deposition, taken by a private investigator, with an attorney on behalf of Plaintiffs present and asking questions simultaneously with the investigator. In taking this mislabeled deposition, Plaintiffs disregarded the rules of civil procedure, the rules of professional conduct, and this Court's scheduling orders. Further, Plaintiffs' counsel hired, directed and assisted a non-attorney to engage in the unauthorized practice of law. Plaintiffs never asked for leave of Court to take this deposition after the close of discovery and they deposed Mr. Gatbonton without Defendant's knowledge in violation of Rule 32(a). Further, this deposition was under this Court's jurisdiction as this case's caption was used and counsel was present on behalf of Plaintiffs. Plaintiffs' irreparable behavior in taking Mr. Gatbonton's deposition further illustrates Plaintiffs' pattern of disregarding discovery deadlines and procedural rules, as well as abuse of process.

On July 11, 2011, Defendant received notice from the law firm of Luper Neidenthal & Logan that they represented Healthscope Benefits on behalf of Nevada Public Employees Benefit Program for a subrogation interest arising out of the alleged February 29, 2008 incident.[16] Because Healthscope paid for the entirety of Mrs. Jackson's treatment costs and has asserted that it is the only entity that has a right to sue under its right of total subrogation, the Plaintiffs no longer have standing to claim damages for Mrs. Jackson's medical treatment, nor can they include such treatment in their computation of damages.

On July 19, 2011—over five months after discovery closed and after dispositive motions were filed—Plaintiffs produced their first Computation of Damages in their Third Supplemental Disclosure pursuant FRCP 26(a)(1), claiming $10,744,035.92 in damages for Carol Jackson and $4,000,000.00 in damages for Thomas Jackson.[17] Plaintiffs based Carol Jackson's past medical expense damages on a Medical Payment Summary from HealthScope Benefits, dated July 14, 2011, stating it had paid $880,022.92 in benefits from the date of the incident through April 1,

---

[15] A EUO is a creature of contract, usually an insurance contract—not a discovery tool. Further, there is no contract between Plaintiffs counsel and Mr. Gatbonton that would allow them to take his examination.

[16] Correspondence from Luper Neidenthal & Logan attached as Exhibit H.

[17] Plaintiffs' Third Supplemental Disclosure is attached as Exhibit I.

BARRON & PRUITT, LLP
ATTORNEYS AT LAW
3890 WEST ANN RD.
NORTH LAS VEGAS, NEVADA 89031
TELEPHONE (702) 870-3940
FACSIMILE (702) 870-3950

1     2010.[18] As for Carol Jackson's future medical expenses of $864,013.00, Plaintiffs referenced their

2     experts Terrence M. Clauretie and John M. Janzen's reports. Plaintiffs provided no explanation as

3     to how they arrived at $3,000,000 in past general damages and $6,000,000 in future pain and

4     suffering for Carol Jackson, or the $1,000,000 in past general and $3,000,000 in future general

5     damages for Thomas Jackson.

6         On August 16, 2011, six months after discovery closed, Plaintiffs produced their Fourth

7     Supplemental Disclosure pursuant FRCP 26(a)(1), producing **4,021 pages** of medical records

8     from various providers—many of whom had never been disclosed as treatment providers during

9     the course of discovery.[19] These were the first medical records Plaintiffs produced in this

10    litigation. Interestingly, Plaintiffs also produced copies of the authorizations sent to the providers,

11    which were only signed by Carol Jackson on May 26, 2011—over three months after the close of

12    discovery.[20] Thus, it is unclear whether Plaintiffs' counsel even attempted to obtain her medical

13    records or bills prior to filing the complaint or throughout the entire discovery period.

14        On August 26, 2011, Plaintiffs served 384 pages of medical bills and updated their

15    computation of damages.[21] As for the updated computation of damages, Plaintiffs increased Carol

16    Jackson's past medical expenses to $1,380,681.84—over $500,000 from the computation of

17    damages produced the month before.[22] Plaintiffs included $249,151.28 in interest on past medical

18    expenses and past general damages—even though all the medical expenses were paid by

19    Healthscope. Plaintiffs also increased Thomas Jackson's damages by including interest in the

20    amount of $56,875.00. Plaintiffs' combined total of their computed damages is $16,430,744.04.

21        For the Court's convenience, Defendant includes as Exhibit N a matrix of providers

22    Plaintiffs have identified in their FRCP 26(a)(1) disclosures or in their computation of damages,

---

[18] Although Plaintiffs may claim this information was not available to them prior to July 14, 2011, Defendant produced a previous version of the lien notice from HealthScope in its Initial Disclosures on March 10, 2010, attached as Exhibit J. As of February 2, 2010, the date of the previous lien notice, the treatment was through December 29, 2009 and totaled $869,922.10.

[19] Plaintiffs' Fourth Supplemental Disclosure, attached as Exhibit K (medical records not attached)

[20] See authorizations, attached hereto as Exhibit L.

[21] Plaintiff's Fifth Supplemental Disclosure, attached as Exhibit M (medical bills not attached)

[22] It appears Plaintiffs include in their damage calculations various treatment Carol Jackson received for her Multiple Sclerosis; mammograms; checkups with an urologist; and check-ups with her cardiologist.

including when the provider was disclosed; when the records for the provider were produced, if at all; and when the bills for the provider were produced, if at all. As shown in this matrix, of the 34 providers Plaintiffs have included in their computation of damages, Plaintiffs have, to date:

- Failed to produce the medical records for 15 of the providers pursuant FRCP 26(a)(1)(A)(ii);

- Failed to produce the bills for eight providers and instead Plaintiffs list the amount of damages from each provider as "TBD"—even though the last listed treatment date for these providers was 3/19/2010;

- Failed to identify 15 providers during the discovery period pursuant FRCP 26(a)(1)(A)(i); and

- Failed to identify two providers—American Medical Response and Associated Pathologists—as witnesses at any time pursuant FRCP 26(a)(1)(A)(i).

The above discussion illuminates the common theme that has coursed through this litigation: Plaintiffs' disregard for this Court's orders and the Federal Rules of Civil Procedure. As such, Defendant respectfully requests the Court sanction Plaintiffs pursuant the Federal Rules of Civil Procedure (FRCP) Rule 37 (b) and (c), Rule 16(f), Rule 56(h), and the Court's inherent powers. In addition, because Defendant's Reply to Plaintiff's Opposition to Defendant's Motion for Summary Judgment (#74) details and requests sanctions for Plaintiffs' conduct in conducting the unauthorized deposition of Archie Gatbonton and submitting Thomas Jackson's sham affidavit in bad faith, Defendant's Reply brief and its request for sanctions is incorporated herein.

## II.    LEGAL ARGUMENT

Defendant requests the Court sanction Plaintiffs and Plaintiffs' counsel pursuant Rule 37(c)(1), Rule 37(b), Rule 16(f), 56(h) and the Court's inherent powers. Each sanction is addressed separately below.

### A.  Sanctions Pursuant FRCP 37(c)(1) for Failure to Comply with FRCP 26(a)

Pursuant to Fed.R.Civ.Pro. 26(a)(1)(A), a plaintiff is required to disclose potential witnesses, documentary evidence, and a computation of its alleged damages. Rule 26(a)(1)(E) states, in pertinent part, "[a] party must make its initial disclosures based on the information then reasonably available to it. A party is not excused from making disclosures because it has not fully investigated the case or because it challenges the sufficiency of another party's disclosures or

BARRON & PRUITT, LLP
ATTORNEYS AT LAW
3890 WEST ANN RD.
NORTH LAS VEGAS, NEVADA 89031
TELEPHONE (702) 870-3940
FACSIMILE (702) 870-3950

1    because another party has not made its disclosures." Rule 26(a)(1)(C) also requires that the

2    disclosures be made early in the case and Rule 26(e)(1)(A) requires that disclosures be

3    supplemented or corrected timely and as necessary as the case proceeds.

4          Pursuant to Rule 37(c),[23] "[i]f a party fails to provide information or to disclose a witness

5    pursuant FRCP 26 (a) or (e), the party is not allowed to use that information or witness to supply

6    evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is

7    harmless." "Rule 37(c)(1) gives teeth to these requirements by forbidding the use at trial of any

8    information required to be disclosed by Rule 26(a) that is not properly disclosed." *Yeti by Molly,*

9    *Ltd. v. Deckers Outdoor Corp.,* 259 F.3d 1101, 1106 (9th Cir.2001)(footnote reference omitted).

10         The Ninth Circuit has consistently upheld the exclusion of evidence, under FRCP 37(c),

11   not produced in a timely manner pursuant to FRCP 26(a)(1)(C).  *See Goodman v. Staples The*

12   *Office Superstore, LLC,* 644 F.3d 817, 827 (9th Cir. 2011) (exclusion of Plaintiff's expert reports

13   upheld where reports were produced more than a month after the deadline); *Quevedo v. Trans-*

14   *Pac. Shipping, Inc.,* 143 F.3d 1255, 1258 (9th Cir.1998) (refusing to consider expert's report

15   because it was filed one-and-a-half months late and plaintiff could have asked for an extension of

16   time); *North Am. Watch Corp. v. Princess Ermine Jewels,* 786 F.2d 1447, 1451 (9th

17   Cir.1986) (order of dismissal affirmed: "Belated compliance with discovery orders does not

18   preclude the imposition of sanctions."); *G-K Properties v. Redevelopment Agency of San*

19   *Jose,* 577 F.2d 645, 647–48 (9th Cir.1978) (order of dismissal affirmed: "last minute tender" of

20   discovery does not cure effects of discovery misconduct).

21         The party disclosing the evidence has the burden of showing that the failure to disclose

22   was substantially justified or harmless. *Allstate Ins. Co. v. Nassiri,* 2010 WL 5248111 (D.Nev.

23   December 16, 2010). The court, in addition to precluding the evidence, or instead of, may order

24   payment of reasonable expenses, including attorney's fees, caused by the failure to make

25

---

26   [23] Unlike motions to compel, "Rule 37 does not require the moving party to meet and confer with the opposing party
     prior to filing a motion for sanctions under Rule 37(b) or (c). *Allstate Ins. Co. v. Nassiri* 2010 WL 5248111, 3

27   (D.Nev. December 6, 2010). *See also Hoffman v. Construction Protective Services, Inc.,* 541 F.3d 1175, 1179 (9th
     Cir.2008); *Sille v. Parball Corporation,* 2010 WL 2505625 (D.Nev.2010) at *2 and *Dayton Valley Investors, LLC v.*

28   *Union Pacific Railroad Co.,* 2010 WL 3829219 (D.Nev.2010) at *2 (same).

BARRON & PRUITT, LLP
ATTORNEYS AT LAW
3890 WEST ANN RD.
NORTH LAS VEGAS, NEVADA 89031
TELEPHONE (702) 870-3940
FACSIMILE (702) 870-3950

1   disclosures; may inform the jury of the party's failure; and may impose other appropriate

2   sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(v). The court does not need to

3   find bad faith before imposing the evidence preclusion sanction. *Yeti by Molly, Ltd. v. Deckers*

4   *Outdoor Corp.*, 259 F.3d 1101, 1106-07 (9th Cir.2001); *Hoffman v. Construction Protection*

5   *Services*, 541 F.3d at 1180; and *Oracle USA, Inc. v. SAP AG*, 264 F.R.D. 541, 545

6   (N.D.Cal.2009).

7          In determining what sanction is appropriate for a party's failure to comply with Rule

8   26(a), courts have considered the following factors: (1) the party's explanation for the failure to

9   comply with the disclosure requirement; (2) the importance of the excluded evidence or

10  testimony; (3) the prejudice suffered by the opposing party as a result of having to meet new

11  evidence; and (4) the possibility of a continuance. *Design Strategy, Inc. v. Davis*, 469 F.3d 284,

12  296, 298 (2d. Cir.2006). The Ninth Circuit has used similar factors in determining whether

13  exclusion was appropriate pursuant Rule 37(c)(1) for a party's failure to disclose expert witness

14  testimony: (1) the public's interest in expeditious resolution of litigation, (2) the court's need to

15  manage its docket, (3) the risk of prejudice to the other parties, (4) the public policy favoring

16  disposition of cases on their merits, and (5) the availability of less drastic sanctions. *Wendt v.*

17  *Host International, Inc.*, 125 F.3d 806, 814 (9th Cir.1997). "Although a finding of willfulness or

18  bad faith is not required in order to impose the exclusion of evidence sanction, willfulness or bad

19  faith is clearly a factor that the court may consider in determining the severity of the sanction."

20  *Allstate Ins. Co.*, 2010 WL 5248111 at 5.

21          **1.   Sanctions are Warranted for Plaintiffs' Failure to Disclose Witnesses**

22          Although Plaintiffs initially disclosed 28 different treatment providers in their initial

23  disclosures on February 17, 2010, in their Fourth and Fifth supplemental disclosures, they

24  identified 15 providers that were never previously identified. In their Fourth Supplemental

25  Disclosure on August 16, 2011, Plaintiffs produced records from CareMeridian, LLC; Ghulam H.

26  Kasef, M.D. of Comprehensive Cancer Center; Laurie Larsen, M.D.; PBS Anaesthesia; Spring

27  Valley Hospital; and Sonoram Medical Imaging. None of these providers were listed as potential

28  witnesses during the course of discovery. In addition, on August 26, 2011, Plaintiffs produced the

BARRON & PRUITT, LLP
ATTORNEYS AT LAW
3890 WEST ANN RD
NORTH LAS VEGAS, NEVADA 89031
TELEPHONE (702) 870-3940
FACSIMILE (702) 870-3950

bills for and included in their computation of damages treatment from Arshad Iqbal, M.D., B.O.N. Clinical Laboratories; Catalyst Rx; David Miller, M.D.; Nevada Imaging Centers; Preferred Homecare; and Dr. Ginsberg of University of Nevada School of Medicine—even though none were ever identified as a potential witnesses pursuant 26(a)(1)(A)(i).[24] Plaintiffs also listed in their computation of damages as providers American Medical Response and Associated Pathologists even though they were not listed as witnesses and no records or bills have been produced.

Plaintiffs' failure to identify these witnesses until months after discovery closed is not harmless. According to Plaintiffs' chronology included in their Fifth Supplemental Disclosures, attached as Exhibit M, Carol Jackson began treating with Dr. Kasef on March 13, 2008[25]; Dr. Iqbal on May 12, 2008; Dr. Larsen on November 9, 2008; Care Meridian on March 1, 2010; AMR on March 1, 2010; Catalyst Rx on March 28, 2008; PBS Anesthesia on January 29, 2010; Spring Valley on January 29, 2010; and Sonoram Medical Imaging on January 23, 2009. Thus, Plaintiffs were on notice that Carol Jackson was treating with these providers long before discovery closed on February 14, 2011. Plaintiffs' failure to comply with Rule 26(a)(1)(A)(i) by not disclosing these witnesses until long after discovery closed prevented Defendant from deposing these providers to determine whether the treatment rendered was related to Plaintiffs claimed damages. Further, because Plaintiffs have still failed to produce the records from some of these providers, Defendant cannot evaluate what the treatment was for or provide the records to its experts to review. Because motion practice has already commenced, a continuance of discovery is not a feasible option and will require Defendant to incur substantial additional costs. Plaintiffs' failure to comply with Rule 26(a)(1)(A)(i) is not harmless or justified and Plaintiffs must be precluded from presenting the above witnesses at trial.

///

BARRON & PRUITT, LLP
ATTORNEYS AT LAW
3890 WEST ANN RD.
NORTH LAS VEGAS, NEVADA 89031
TELEPHONE (702) 870-3940
FACSIMILE (702) 870-3950

---

[24] Records from Dr. Iqbal, Preferred Homecare, and Nevada Imaging Centers were recently produced in Plaintiffs' Sixth Supplemental Disclosure on September 9, 2011. Records from Catalyst, B.O.N. Clinical, Dr. Miller, and Dr. Ginseberg have not been produced to date.

[25] The medical bills from Dr. Kasef actually indicate Carol Jackson had been treating with Dr. Kasef since 2001. Even though she received identical treatment both before and after the incident, Plaintiffs include Dr. Kasef's treatment in their computation of damages.

### 2. Sanctions are Warranted for Plaintiffs' Failure to Produce Any Medical Records or Bills

As noted above, Rule 26(a)(1)(A)(ii) requires parties to produce all documentary evidence that the party may use to support a claim or defense. Nonetheless, Plaintiffs failed to produce a single medical record during the course of discovery to support any of their claims or defenses. Rather, Plaintiffs waited six months after discovery closed to produce any medical records or bills. Plaintiffs have the burden of proving their failure to timely produce medical records and bills pursuant to FRCP 26(a)(1) is harmless or justified. *Yeti*, 259 F.3d at 1107.

Plaintiffs' failure to produce the medical bills and records is not harmless. In their supplemental disclosures, Plaintiffs produced records from multiple providers that were never disclosed during the course of discovery and Defendant had no way of knowing that Plaintiffs would include such treatment in their computation of damages. Because Plaintiffs waited until months after discovery closed to disclose over 4,000 pages of medical records and bills, Defendant is now deprived of the opportunity of deposing Carol Jackson's treatment providers about any inconsistencies; new information contained in the records; whether such treatment was related to the incident; or whether the providers' charges were reasonable and customary. Moreover, this case has entered the pre-trial phase with multiple dispositive motions and pretrial motions pending before the Court. Reopening discovery at this point would further delay resolution to a case commenced nearly two years ago, not to mention, cause Defendant to incur additional attorney's fees and costs.

Likewise, Plaintiffs have no substantial justification for their untimely disclosure. As noted above, it appears Plaintiffs made no attempt to request Carol Jackson's medical records and bills until May 24, 2011—over three months after discovery closed. In fact, Plaintiffs' requests to the providers coincide with the hearing on May 12, 2011, at which Defendant's counsel mentioned to the Court that Plaintiffs had not produced a single medical record or bill to date. Given that the incident occurred over three and a half years ago and Plaintiffs' Complaint was filed on December 9, 2009, Plaintiffs had ample opportunity to obtain such records and seasonably disclose them during the year-long discovery period.

BARRON & PRUITT, LLP
ATTORNEYS AT LAW
3890 WEST ANN RD.
NORTH LAS VEGAS, NEVADA 89031
TELEPHONE (702) 870-3940
FACSIMILE (702) 870-3950

1    Finally, Plaintiffs still have not produced records from some treatment providers that they

2    apparently plan to include in their damage claims. Specifically, even though the providers are

3    listed on Plaintiffs' computation of damages or as witnesses in their initial disclosures, Plaintiffs

4    have not produced records from 15 providers: AMR, Associated Pathologist, B.O.N. Clinical

5    Laboratories, Catalyst Rx, Dr. David Miller, Diagnostic Imaging, Gregory Goetz, In Patient

6    Consultants Gnaneshwar Billakanti, M.D., West Medic Ambulance, Nevada Vascular Institute,

7    Radiology Association of Nevada, Ramin Etebar, Dr. Ted Thorp, UMC, and University of

8    Nevada School of Medicine.

9    Thus, Plaintiffs' failure to disclose a single medical record or bill throughout the course of

10   discovery and to date, still not producing records for over 15 providers, is yet another example of

11   Plaintiffs' dilatory behavior that has haunted this litigation. Defendant requests Plaintiffs'

12   Complaint be dismissed, or, in the alternative, pursuant FRCP 37 (c), to preclude Plaintiffs from

13   presenting any evidence through medical records that were disclosed after the close of discovery;

14   specifically, all records produced in Plaintiffs' Second, Third, Fourth, Fifth, Sixth and any further

15   supplemental disclosures.

16   **3.    Sanctions are Warranted for Plaintiffs' Failure to Produce a Computation of**

17   **Damages**

18   Pursuant FRCP 26(a)(1)(A)(iii), a plaintiff is required to provide a computation of

19   damages. The parties are required to supplement their initial computation of damages as

20   discovery proceeds to reflect additional information obtained through discovery. *Id*; *see also*

21   *Allstate Ins. Co. v. Nassiri*, 2010 WL 5248111 (D.Nev. December 16, 2010).

22   Although Rule 26 does not elaborate on how specific a computation of damages must be,

23   plaintiffs should provide a "computation of damages in light of the information currently

24   available to it in sufficient detail so as to enable the defendants to understand the contours of their

25   potential exposure and make informed decisions regarding settlement and discovery." *Id*. (citing

26   *City and County of San Francisco v. Tutor-Saliba Corp.*, 218 F.R.D. 219, 221-222

27   (N.D.Cal.2003)). "A computation of damages may not need to be detailed early in the case before

28   all relevant documents or evidence has been obtained by the plaintiff." *CCR/AG Showcase Phase*

BARRON & PRUITT, LLP
ATTORNEYS AT LAW
3890 WEST ANN RD.
NORTH LAS VEGAS, NEVADA 89031
TELEPHONE (702) 870-3940
FACSIMILE (702) 870-3950

1   *I Owner, L.L.C. v. United Artists Theatre Circuit, Inc.,* 2010 U.S. Dist. LEXIS 56137, 2010 WL

2   1947016 (D.Nev. May 13, 2010). Even though it may not be possible for a plaintiff to provide a

3   detailed computation of damages early in a case, a plaintiff must still provide a computation of

4   damages based on what is reasonably available and supplement the computation as discovery

5   progresses. *Design Strategy, Inc. v. Davis,* 469 F.3d 284 295-96 (2nd Cir.2006); *Frontline*

6   *Medical Associates, Inc. v. Coventry Health Care,* 263 F.R.D. 567, 569 (C.D.Cal.2009). Further,

7   plaintiffs are required to provide some analysis and the theory of their computation of damages,

8   rather than just providing a lump sum. *Id. See also 24/7 Records, Inc. v. Sony Music*

9   *Entertainment, Inc.,* 566 F.Supp.2d 305, 318 (S.D.N.Y.2008). "The plaintiff cannot shift to

10  defendant the burden of attempting to determine the amount of the claimed damages from

11  documents that are produced without any explanation of plaintiff's claimed damages." *Allstate*

12  *Ins. Co.,* 2011 WL 2977127 at 4.

13          The exclusion of evidence based on a party's failure to provide a computation is normally

14  limited to extreme situations, such as where a plaintiff does not provide the computation of

15  damages until shortly before trial or until long after discovery closed. *Hoffman v. Construction*

16  *Protective Services, Inc.,* 541 F.3d 1175 (9th Cir.2008)(affirming exclusion of evidence of

17  damages where plaintiffs did not produce a computation of damages prior to trial); *24/7 Records,*

18  566 F .Supp.2d at 318 (precluding plaintiff from presenting evidence of new theory of damages

19  that was not asserted until months after discovery closed).[26]

20          Here, there is nothing that prevented Plaintiffs from providing a computation of damages

21  and complying with FRCP 26 during the discovery period. As shown in Defendant's Matrix,

22  Exhibit N, the majority of Carol Jackson's past medical damages arise from services that were

23  conducted long before the Complaint was filed or the Early Case Conference was held. Further, it

24  appears there are only four providers Carol Jackson continues to treat with.[27] There is no

25  justification for Plaintiffs not providing any calculation of damages until months after discovery

26  _____

27  [26] In a recent unreported decision, the Nevada Supreme Court held that instead of dismissing the Complaint due to appellants' failure to provide a computation of damages for special damages, "as an appropriate sanction, appellants shall be precluded from offering any evidence in support of their medical expense and lost wage claims." *Walters v. Meeks,* 2011 WL 4527714, attached as Exhibit O.

28  [27] *See* Defendant's Matrix.

BARRON & PRUITT, LLP
ATTORNEYS AT LAW
3890 WEST ANN RD.
NORTH LAS VEGAS, NEVADA 89031
TELEPHONE (702) 870-3940
FACSIMILE (702) 870-3950

1  closed and dispositive motions filed—and then calculating their damages at $16,430,744.04.

2  Further, Defendant will be prejudiced because Plaintiffs' failure to provide a calculation of

3  damages prevented Defendant from making informed decisions regarding the contours of its

4  exposure and scoping discovery. Plaintiffs waited until six months after discovery closed to now

5  claim over a million dollars more in past medical expenses.

6  Finally, Plaintiffs' failure to disclose a computation of damages is not harmless at this

7  stage of the litigation. Plaintiffs are claiming $3,000,000 in past general damages and $6,000,000

8  in future pain and suffering for Carol Jackson and $1,000,000 in past general and $3,000,000 in

9  future general damages for Thomas Jackson. Plaintiffs provide no explanation or calculations for

10  how they arrived at these numbers. As such, Plaintiffs' late disclosure of damages would most

11  likely require the Court to re-open discovery regarding the issue of damages—when discovery

12  has been closed for over six months and dispositive and pretrial motions have already been

13  filed—instead of proceeding with the pending motions and setting a trial date. "Such

14  modifications to the court's and the parties' schedules supports a finding that the failure to

15  disclose was not harmless." *Hoffman*, 541 F.3d at 1180. Further, there is no reasonable

16  explanation for Plaintiffs' failure to comply with the disclosure requirements and the prejudice

17  Defendant will face as a result of having to meet and refute new evidence produced months after

18  discovery closed. Finally, failing to provide any reasonable method or formula for $13,000,000 is

19  not harmless. As such, due to Plaintiffs' failure to produce a computation of damages during the

20  course of discovery, Defendant requests the Court strike Plaintiff's Complaint and damage

21  claims, or in the alternative, exclude Plaintiffs' damage evidence at trial.

22  **4. Plaintiffs are not the Real Party in Interest for Mrs. Jackson's Past Medical**

23  **Expenses and Such Amounts must be Excluded from any Computation of**

24  **Damages and Excluded at Trial.**

25  As discussed above, Healthscope satisfied the entirety of Mrs. Jackson's medical

26  treatment bills and has asserted a subrogation right. As such, Healthscope, not Plaintiffs, is the

27  real party in interest for such amounts and Plaintiffs are not entitled to recover for them. In

28  diversity actions, whether the plaintiff is the proper party to maintain the action is determined by

- 15 -

state law. *Allstate Ins. Co. v. Hughes*, 358 F3d 1089, 1093-1094, 191 FRD 653 (9th 2004). Under Nevada Rules of Civil Procedure, Rule 17(a) "[e]very action shall be prosecuted in the name of the real party in interest." A real party in interest "is one who possesses the right to enforce the claim and has a significant interest in the litigation." *Szilagyi v. Testa,* 99 Nev. 834, 838, 673 P.2d 495, 498 (1983).

Here, Healthscope Benefits on behalf of Nevada Public Employees Benefit Program has notified the parties that it has paid for the entirety of Mrs. Jackson's medical treatment and that it has a subrogation interest.[28] Subrogation is "[t]he principle under which an insurer that has paid a loss under an insurance policy is entitled to all the rights and remedies belonging to the insured against a third party with respect to any loss covered by the policy." *Black's Law Dictionary* 1563–64 (9th ed. 2009). "[A]n insurer that pays its insured *in full* for claimed losses is subrogated by operation of law to the rights, if any, which the insured may have had against the tortfeasor before payment was made." *Duboise v. State Farm Mut. Auto. Ins.,* 96 Nev. 877, 879, 619 P.2d 1223, 1224 (1980) (emphasis added). "In such a case the insurer ... is the sole party in interest, and the only one who may assert a claim against those thought to be ultimately liable." *Valley Power Co. v. Toiyabe Supply,* 80 Nev. 458, 461, 396 P.2d 137, 138 (1964). Although Plaintiffs were not fully subrogated for all interests in their claims, Mrs. Jackson's past medical bills have been fully subrogated and her healthcare insurer has asserted that it, not Plaintiffs, are the real parties in interest for such amounts. As such, amounts for her past medical care that was paid in full by Healthscope must be stricken from Plaintiffs' computation of damages and excluded at trial.

## B. Sanctions are Warranted Pursuant to FRCP 37(b) and 16(f) for Plaintiffs' Violations of Discovery Orders

Plaintiffs violated the Court's October 5, 2010 Order on the Parties Stipulation to Extend Discovery, ordering the discovery cut-off February 14, 2011 (#22); the Court's January 31, 2011 Order denying Plaintiffs' Motion to Extend Discovery (#23); and the Court's May 12, 2011,

---

[28] Correspondence from Luper Neidenthal & Logan attached as Exhibit H.

BARRON & PRUITT, LLP
ATTORNEYS AT LAW
3890 WEST ANN RD.
NORTH LAS VEGAS, NEVADA 89031
TELEPHONE (702) 870-3940
FACSIMILE (702) 870-3950

1  denying Plaintiffs' additional request to extend discovery, denying Plaintiffs' request to depose

2  Master Janitorial, and officially closing all of discovery on May 12, 2011. Despite most of

3  discovery closing on February 14, 2011 (the limited extensions were in regard to deposing experts

4  and attempting to depose Master Janitorial), Plaintiffs failed to produce any documents to support

5  their claims and took a deposition, without leave of Court, after the discovery deadline and

6  without Defendant's knowledge.

7       "A prerequisite for imposing sanctions under FRCP 37(b) is the existence of an "order."

8  However, the term "order" is broadly construed for purpose of imposing sanctions." *Lee v.*

9  *Walters*, 172 F.R.D. 421, 431 (D. Or 1997); *see also United States v. Lisle*, WL 178731(N.D.Cal.

10  1992), citing *Fjelstad v. American Honda Motor Co.*, 762 F.2d 1334, 1339 (9th Cir. 1995); 8

11  Charles A. Wright & Arthur Miller, *Federal Practice and Procedure* § 2289 (1970); *see also*

12  *Henry v. Gill Industries, Inc.*, 983 F.2d 943, 948 (9th Cir. 193) (all that is required to prove

13  willful and bad faith defiance of a discovery order is "disobedient conduct not shown to be

14  outside the control of the litigant."). As the Ninth Circuit has explained:

> Litigants who are willful in halting the discovery process act in opposition to
> the authority of the court and cause impermissible prejudice to their
> opponents. It is even more important to note, in this era of crowded dockets,
> that they also deprive other litigants of an opportunity to use the courts as a
> serious dispute-settlement mechanism.

*G-K Properties,* 577 F.2d at 647-48. The Court may impose an array of sanctions on a party if he

or she fails to comply with a court order regarding discovery, including:

> (i) directing that the matters embraced in the order or other designated facts
> be taken as established for purposes of the action, as the prevailing party
> claims;
>
> (ii) prohibiting the disobedient party from supporting or opposing
> designated claims or defenses, or from introducing designated matters in
> evidence;
>
> (iii) striking pleadings in whole or in part;
>
> (iv) staying further proceedings until the order is obeyed;
>
> (v) dismissing the action or proceeding in whole or in part;
>
> (vi) rendering a default judgment against the disobedient party; or
>
> (vii) treating as contempt of court the failure to obey any order except an
> order to submit to a physical or mental examination.

BARRON & PRUITT, LLP
ATTORNEYS AT LAW
3890 WEST ANN RD.
NORTH LAS VEGAS, NEVADA 89031
TELEPHONE (702) 870-3940
FACSIMILE (702) 870-3950

…

(C) *Payment of Expenses*. Instead of or in addition to the orders above, the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 37(b)(2). "FRCP 37 does not require the violation to be in bad faith unless the court imposes the harshest sanctions of dismissal or default." *Lee v. Walters*, 172 F.R.D. 421, 432 (D. Or 1997).

Like Rule 37(b), Rule 16(f) imposes sanctions for a party's failure to comply with scheduling or pretrial orders. Dismissal is an available sanction pursuant Rule 16(f). In order to determine whether dismissal is warranted, the court must balance the following factors: (1) the extent of the parties' personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) the history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entailed an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defenses." *Rabb v Amatex Corp.*, 769 F2d 996 (4th Cir.1985) (Affirming order dismissing claim for failure to obey pretrial order where plaintiff deliberately disregarded the order by failing to abide by the court's discovery timetable set forth in the pretrial order); *Callip v Harris County Child Welfare Dept.*, 757 F2d 1513 (5th Cir. 1985) (plaintiff's delay in the prosecution of the action by failing to comply with at least nine deadlines imposed by specific scheduling orders or by the rules of procedure showed a clear record of delay so as to warrant dismissal under FRCP 16(f)); *Carter v. Jablonsky*, 121 Fed. Appx. 888 (2d Cir. 2005) (Applying same standards as in Rule 37(b) and finding dismissal warranted where multiple extensions were given by trial court and there was considerable effort to secure plaintiff's cooperation, plaintiff still failed to meet multiple deadlines requiring plaintiff to file witness and exhibit lists).

Pursuant this Court's orders noted above, discovery closed on February 14, 2011, except for some limited discovery regarding expert depositions, which closed on March 13, 2011, and the deposition of Master Janitorial. Discovery in its entirety was closed on May 13, 2011.

BARRON & PRUITT, LLP
ATTORNEYS AT LAW
3890 WEST ANN RD.
NORTH LAS VEGAS, NEVADA 89031
TELEPHONE (702) 870-3940
FACSIMILE (702) 870-3950

- 18 -

BARRON & PRUITT, LLP
ATTORNEYS AT LAW
3890 WEST ANN RD.
NORTH LAS VEGAS, NEVADA 89031
TELEPHONE (702) 870-3940
FACSIMILE (702) 870-3950

1   Nonetheless, Plaintiffs waited months after the close of discovery to identify numerous witnesses;

2   to produce any medical records or bills to support their claims; to produce a computation of

3   damages; and to take an authorized deposition. Although dismissal pursuant Rule 16(f) or 37(b) is

4   an extreme sanction, it is warranted given Plaintiffs' pattern of delay, dilatory behavior, and

5   disregard for this Court's orders and the Federal Rules of Civil Procedure.

6   **C.   Sanctions are Warranted Pursuant to FRCP 30(d)(2) for Plaintiffs' Violation of the**

7   **Rules Governing Depositions.**

8   Although discovery closed on February 14, 2011, Plaintiffs disregarded the Court's orders

9   and deposed Mr. Gatbonton on July 6, 2011. However, Plaintiffs' discovery abuses do not end

10   there. Rather, Plaintiffs failed to notify Defendant as required by FRCP 30(b)(1) that they

11   intended to take Mr. Gatbonton's deposition, thereby purposely preventing Defendant from

12   appearing or cross-examining him; had the deposition conducted by a non-lawyer and Plaintiffs'

13   counsel assisted the non-lawyer in the unauthorized practice of law; and, Plaintiffs disregarded

14   proper procedures for deposing a deaf individuals and the ASL Interpreter was not qualified

15   under federal rules.

16   **1.   Plaintiffs Failed to Provide Notice of Mr. Gatbonton's deposition**

17   Parties and their counsel have the right to attend every deposition. *Galella v. Onassis*, 487

18   F.2d 986, 997 (2nd Cir. 1973). FRCP 32(a)(1)(A) provides that a deposition can be used against a

19   party in a court proceeding only if the party was present of had reasonable notice thereof.

20   Pursuant FRCP 30(d)(2), "[t]he court  may impose an appropriate sanction—including the

21   reasonable expenses and attorney's fees incurred by any party—on a person who impedes, delays,

22   or frustrates the fair examination of the deponent." "Merely because depositions do not take place

23   in the presence of a judge does not mean lawyers can forget their responsibilities as officers of the

24   court.  They should conduct themselves accordingly." *Van Pilsum v. Iowa State Univ. of Science*

25   *and Technology*, 152 F.R.D. 179, 181 (S.D.Iowa 1993).  As stated in the Advisory Committee

26   Notes to the 1993 Amendments to Rule 30, "[i]n general, counsel should not engage in any

27   conduct during a deposition that would not be allowed in the presence of a judicial officer."

28

Plaintiffs entitled Mr. Gatbonton's deposition an "Examination Under Oath," or EUO[29]. However, this was not a EUO—it was an unauthorized and unnoticed deposition and merely titling it as a EUO does not allow Plaintiffs the right to disregard the rules of civil procedure and their duties as members of the bar.

Because Mr. Gatbonton's deposition was taken as part of this litigation and pursuant the Court's jurisdiction, Plaintiffs were required to provide Defendant notice of the deposition, but did not.[30]   As such, Defendant was not allowed the opportunity to participate in the deposition or to object to the deposition being taken after the close of discovery.  Further, it is unclear whether Plaintiffs subpoenaed Mr. Gatbonton or if he was even provided proper notice pursuant the rules of civil procedure.

## 2.  Mr. Gatbonton's Deposition was Conducted by a Non-Lawyer.

Mr. Gatbonton's deposition was conducted in the presence of Plaintiff's attorney Judy Cox, a court reporter, private investigator Robert Clymer, and ASL interpreter Ray Wright.  The actual examination of Mr. Gatbonton, however, was conducted by Mr. Clymer.  Although, Mr. Clymer is a licensed private investigator, a search of the Nevada State Bar records indicates that he has never been licensed as an attorney in Nevada.

In Nevada, a non-lawyer may not engage in the unauthorized practice of law.  The Nevada Supreme Court has said that determination of what constitutes the "practice of law" should be left to the particular facts of each case, "bearing in mind the overarching principle that the practice of law is involved when the activity requires the exercise of judgment in applying general legal knowledge to a client's specific problem." *In re Discipline of Lerner,* 197 P.3d 1067 (Nev. 2008).

---

[29] *See Brizuela v. Calfarm Ins. Co.*, 116 Cal.App.4th 578, 592, 10 Cal.Rptr.3d 661, 672 (Cal.App. 2 Dist.,2004) ("The purpose of an examination under oath is to obtain information as part of the insurer's investigation of the insured's claim rather than for the litigation.  The procedures are also different, for an examination under oath is not subject to the Code of Civil Procedure, and the insured's counsel has no right to examine the insured. Also, unlike a deposition, in an examination under oath, the insured is obligated to volunteer relevant information.")

[30] Based on Plaintiffs' actions thus far in this litigation, Defendant requests that if a notice suddenly appears, the Court take appropriate actions as it never received a notice and Plaintiffs made no attempt to notifying Defendant of their intent to depose Mr. Gatbonton.

BARRON & PRUITT, LLP
ATTORNEYS AT LAW
3890 WEST ANN RD.
NORTH LAS VEGAS, NEVADA 89031
TELEPHONE (702) 870-3940
FACSIMILE (702) 870-3950

The taking of a deposition is within the practice of law because it requires application of law and facts to represent a client. Stated differently, one must use legal principles to analyze the client's issue in order to define the relevant scope of information to explore in the deposition. Here, Mr. Clymer questioned Mr. Gatbonton on a variety of topics, including whether a substance was on the floor where Mrs. Jackson fell and whether it had been cleaned prior to—implicating the legal principles of notice and standards of care. Further, the deposition was taken under this Court's jurisdiction and authority as this case's caption was used and it was done for the purpose of creating an issue of material fact to defeat Defendant's dispositive motion. Accordingly, Mr. Clymer engaged in the unauthorized practice of law.

Finally, the Nevada Rules of Professional Conduct, Rule 5.5(a)(2), prohibit an attorney from assisting another person in the unauthorized practice of law. Here, Ms. Cox, a licensed attorney in Nevada, attended the deposition and at times clarified and interjected questions posed by Mr. Clymer. As such, she assisted Mr. Clymer in conducting an unauthorized deposition and assisted a non-lawyer in the unauthorized practice of law.

### 3. Plaintiffs' ASL Interpreter is Unqualified to Provide Services in a Legal Proceeding, and the Conduct of those present Renders the Deposition Unreliable.

Plaintiffs, without consultation with or notice to Defendant, retained Ray Wright to serve as Mr. Gatbonton's ASL interpreter during the deposition. Mr. Wright, however, does not have the requisite credentials to provide interpreting services in a legal proceeding. That, coupled with the conduct of Mr. Wright, Ms Cox and Mr. Clymer during the deposition, raises serious questions as to the reliability of the translation of questions posed to Mr. Gatbonton and his responses thereto.

As an initial matter, the deposition transcript lists the interpreter as Ray Wright. However, there is no Ray Wright who is a certified American Sign Language interpreter. Instead, Plaintiffs provided the certification listing for one Ray Quatermus, who apparently Plaintiffs

BARRON & PRUITT, LLP
ATTORNEYS AT LAW
3890 WEST ANN RD.
NORTH LAS VEGAS, NEVADA 89031
TELEPHONE (702) 876-3940
FACSIMILE (702) 870-3950

- 21 -

BARRON & PRUITT, LLP
ATTORNEYS AT LAW
3890 WEST ANN RD.
NORTH LAS VEGAS, NEVADA 89031
TELEPHONE (702) 870-3940
FACSIMILE (702) 870-3950

1  allege is Ray Wright.[31]  However, there is no way Defendant can verify that Ray Wright is Ray

2  Quartermus and that Plaintiffs actually used a certified interpreter.

3      Nonetheless, even assuming Ray Wright and Ray Quartermus are one in the same, Ray

4  Quartermus is not a qualified interpreter. Congress requires federal courts to certify interpreters

5  for use in federal judicial proceedings.  *See* Court Interpreters Act, 28 U.S.C. §§ 1827-28.

6  Interpreters and translators are classified into three categories by the federal courts: certified,

7  professionally qualified, and language skilled.[32]  An interpreter for the deaf falls under the

8  professionally qualified category.  The category applies only to languages other than Spanish,

9  Navajo, and Haitian Creole.  "Credentials for professionally qualified interpreters require

10  sufficient documentation and authentication, and must meet the criteria in one of the following:

11  (d) For sign language interpreters, someone who holds the Specialist Certificate: Legal (SC:L) of

12  the Registry of Interpreters for the Deaf (RID)." *Id.*  RID indicates that the field of sign language

13  interpretation has developed specific credentials that indicate minimum levels of competency to

14  interpret in legal settings.[33]

15      Although Plaintiffs provided evidence purporting to show Mr. Quartermus' credentials as

16  an interpreter, they do not meet the Federal District Courts' requirements for certification

17  because Mr. Mr. Quartermus' RID certification is "NIC Advanced," not the required SC:L. As

18  such, Mr. Wright is not qualified to provide ASL interpretation in this legal proceedings.

19      In addition to Plaintiffs not using a certified interpreter at the deposition, they did not

20  follow other important protocols to ensure the reliability of the interpretation. According to RID,

21  most legal assignments require two interpreters.[34]  One interpreter actively interprets while the

22  other interpreter watches to ensure accuracy of the interpretation. *Id.* The process is alternated at

23  appropriate intervals between the two interpreters. In addition, there are different levels of

---

[31] RIC Member Entry for Ray Quartermus, previously produced by Plaintiffs, Document #75, Exhibit 2-12, attached hereto as Exhibit P.

[32] *See* Federal Court Interpreters, *available at* http://www.uscourts.gov/FederalCourts/UnderstandingtheFederalCourts/DistrictCourts/CourtInterpreters.aspx

[33] Professional Standards Committee of the Registry of Interpreters for the Deaf, *Interpreting in Legal Settings*, p. 1 (2007), attached hereto as Exhibit Q.

[34] *Interpreting in Legal Settings*, p. 2.

understanding across the deaf community. *Id.* Individuals who have been deaf all their life will communicate and understand differently than someone who became deaf after some period of hearing. *Id.* Varying levels of ASL education will also affect communication and understanding between an individual and the interpreter. *Id.* It is therefore incumbent upon the interpreter to take time to make an accurate assessment of the communication needs. If specialized communication services are required, RID advises that the interpreter will inform the hiring party and assist in locating the specialized services. *Id.*

An interpreter who renders services in legal proceedings may be called as a witness later to defend their work in the interpreted assignment. *Id.* The interpreter is a witness in the sense that the accuracy of his translation is a question of fact which may be put in issue by counsel. *People v. Ong Git*, 137 P 283 (Cal. 1913); *People v. Lem Deo,* 64 P. 265 (Cal. 1901). As such, additional protections are typically instituted such as videotaping the session, using consecutive interpreting principles and providing for the assistance of a credentialed deaf interpreter. *Id.* Mr. Wright employed none of the aforementioned practices while interpreting for Mr. Gatbonton. He did not work in conjunction with a second interpreter to verify accuracy of his translations nor did he videotape his translation. There is also no evidence that he conducted an assessment of Mr. Gatbonton's communication abilities. Because Mr. Wright employed none of the aforementioned safeguards, Defendant has no ability to determine the accuracy or quality of his translation services.

Mr. Gatbonton's deposition transcript also contains a number of instances where the Mr. Wright engaged in dialogue with Mr. Gatbonton regarding the question being asked and the answer he had given:

- The interpreter asks Mr. Gatbonton additional questions and at times engages in dialogue with him to clarify the answers given.[35]

- Mr. Gatbonton first asserts that Mrs. Jackson showed him where the butter was. However, after prodding from the interpreter and Ms. Cox, he changed his story to say that Mr. Jackson showed him where the butter was.[36]

---

[35] Examination Under Oath of Archibald Gatbonton, 8:3; 9:6-7; 9:11-14; 9:19-23; 10:19-20; 12:12; 12:20-23; 14:3; 14:14; 15:4-5; 15:11-13; 16:1; 16:4-5; 17:10; 17:20; 17:25; 18:1-2; 19:20-23; 20:2-3; 21:18-19; 25:1; 29:16-17; 32:20, attached to Plaintiffs' Opposition to Defendant's Motion for Partial Summary Judgment ( Document No. 69-1) as Exhibit 1.

BARRON & PRUITT, LLP
ATTORNEYS AT LAW
3890 WEST ANN RD.
NORTH LAS VEGAS, NEVADA 89031
TELEPHONE (702) 870-3940
FACSIMILE (702) 870-3950

- Mr. Gatbonton and Mr. Wright indicate, at least at one point, that they are confused by the line of questioning. Neither Ms. Cox nor Mr. Clymer attempt to clarify their question(s) but instead permit Mr. Gatbonton to answer whatever he and/or the interpreter thought was being asked.[37]

Mr. Wright's questioning casts doubt on the reliability of Mr. Gatbonton's response because such questioning may have influenced Mr. Gatbonton's responses to Mr. Clymer and Ms. Cox's questions. Further, Ms. Cox and Mr. Clymer often addressed their questions to Mr. Wright rather than to Mr. Gatbonton directly as is customary. For example, they asked Mr. Wright questions such as "does he [Mr. Gatbonton] know…" This practice is not permitted because it is improper to address questions to the interpreter. 172 A.L.R. 923. If this occurs, the interpreter is likely to put the questions to the witness in his own words, words which the stenographer cannot take down. *Id.* He will even explain to the witness what he wants or thinks the attorney wants. Even if he avoids doing this, there is an impeding awkwardness in the examination. *Id.* The questioner "should address his questions to the witness, ignoring the interpreter as though he were a mere mechanical contrivance." *Id. See also*, *Gregory v. Chicago*, 124 N.W. 797 (Iowa 1910).

Although sanctions under FRCP 30(d)(2) are usually imposed on parties who fail to act properly during a deposition, Plaintiffs' counsel's conduct of deposing one of Defendant's former managers—who is handicapped—without noticing the deposition; without him having counsel present; having two individuals conduct the deposition simultaneously; allowing a non-lawyer to conduct the deposition; and not giving Mr. Gatbonton any admonitions, frustrated his fair examination. Further, Plaintiffs relied on the translations of an ASL interpreter who was not certified to provide interpretation in a legal proceeding.[38] Moreover, the accuracy and reliability of Mr. Gatbonton's responses is in doubt because the deposition was not videotaped, and Plaintiffs permitted the interpreter to question Mr. Gatbonton and seek clarification of his responses. Finally, even if Mr. Gatbonton is redeposed, Defendant does not know what

---

[36] Examination Under Oath of Archibald Gatbonton, 15:1-25; 16:1-6.

[37] Examination Under Oath of Archibald Gatbonton, 29:13-20.

[38] "It is unlawful for a person to act as a certified court interpreter or advertise or put out any sign or card or other device which might indicate to the public that he is entitled to practice as a certified court interpreter without a certificate as an interpreter issued by the court administrator pursuant to NRS 1.510 and 1.520." NRS 1.540.

- 24 -

BARRON & PRUITT, LLP
ATTORNEYS AT LAW
3890 WEST ANN RD.
NORTH LAS VEGAS, NEVADA 89031
TELEPHONE (702) 870-3940
FACSIMILE (702) 870-3950

BARRON & PRUITT, LLP
ATTORNEYS AT LAW
3890 WEST ANN RD.
NORTH LAS VEGAS, NEVADA 89031
TELEPHONE (702) 870-3940
FACSIMILE (702) 870-3950

1    Plaintiffs' counsel said to Mr. Gatbonton and whether they have tampered with him as a witness.

2    **D.  Sanctions are Warranted Pursuant the Court's Inherent Powers**

3       "District courts may impose sanctions as part of their inherent power "to manage their

4    own affairs so as to achieve the orderly and expeditious disposition of cases."" *In re Napster, Inc.*

5    *Copyright Litigation*, 462 F.Supp.2d 1060, 1066 (N.D.Cal.,2006)(citing *Chambers v. NASCO,*

6    *Inc.*, 501 U.S. 32, 43, 111 S. Ct. 2123, 115 L.Ed.2d 27, reh'g denied, 501 U.S. 1269, 112 S.Ct.

7    12, 115 L.Ed.2d 1097 (1991).  "A district court may also under its inherent powers sanction a

8    party or counsel who "willfully abuse[s] the judicial process." Such sanctions require a court to

9    make a finding of subjective bad faith." *Oregon RSA No. 6, Inc. v. Castle Rock Cellular of*

10   *Oregon Ltd. Partnership*, 76 F.3d 1003, 1007 (9th Cir. 1996)(citing *Roadway Express, Inc. v.*

11   *Piper,* 447 U.S. 752, 766, 100 S.Ct. 2455, 2464, 65 L.Ed.2d 488 (1980)).

12       Further, "courts have inherent power to dismiss an action when a party has willfully

13   deceived the court and engaged in conduct utterly inconsistent with the orderly administration of

14   justice." *Wyle v. R.J. Reynolds Indus., Inc.,* 709 F.2d 585, 589 (9th Cir. 1983); *see also Phoceene*

15   *Sous-Marine, S.A. v. U.S. Phosmarine, Inc.,* 682 F.2d 802, 806 (9th Cir.1982). "Dismissal under a

16   court's inherent powers is justified in extreme circumstances, in response to abusive litigation

17   practices, and to insure the orderly administration of justice and the integrity of the court's

18   orders." *Halaco Engineering Co. v. Costle*, 843 F.2d 376, 380 (9th Cir. 1988)(internal citations

19   omitted).

20       "[T]he court retains the inherent power to impose sanctions for discovery abuses that may

21   not technically violate the rules of discovery.  The choice to render such a drastic sanction rests

22   within the discretion of the court, provided the disobedient party's non-compliance was due to

23   willfulness, fault, or bad faith." *Reed v. Van Boening*, 2011 WL 2443716, 2 (W.D.Wash.,2011)

24   (internal citations omitted). A court's inherent powers, nonetheless, are not limitless:

25           "Dismissals under a court's inherent powers are subject to much the same
26           considerations as those under the Federal Rules of Civil Procedure. A
             district court must determine (1) the existence of certain extraordinary
27           circumstances, (2) the presence of willfulness, bad faith, or fault by the
             offending party, (3) the efficacy of lesser sanctions, (4) the relationship or
28           nexus between the misconduct drawing the dismissal sanction and the

BARRON & PRUITT, LLP
ATTORNEYS AT LAW
3890 WEST ANN RD.
NORTH LAS VEGAS, NEVADA 89031
TELEPHONE (702) 876-3940
FACSIMILE (702) 876-3950

matters in controversy in the case, and finally, as optional considerations where appropriate, (5) the prejudice to the party victim of the misconduct, and (6) the government interests at stake."

*Halaco Engineering Co.*, 843 F.2d at 380; *see also*, *North American Watch Corp.*, 786 F.2d at 1451 ("We are persuaded that the failure to comply with an order of the court coupled with the attempt to deceive the court and prejudice North American justified the imposition of the dismissal sanction in this case, under either Rule 37 o[r] the court's inherent power to control proceedings before it."); *Coleman-Worthington Productions, Inc. v. Schuller*, 914 F.2d 1496 (Table)(9th Cir. 1990)(Affirming dismissal of plaintiff's case because plaintiff "perpetrated a fraud on the Court by intentionally making material, false allegations in a complaint filed with this court on May 11, 1988, and by willfully supporting their false allegations with a bogus contract" (quoting district court decision)).

Here, Plaintiffs' actions amount to an abuse of judicial process by taking Mr. Gatboton's deposition, submitting an affidavit in bad faith, and for their continuous pattern of disregard for this Court's orders and the rules of civil procedure. Defendant incorporates by reference its arguments from Defendant's Reply brief (#74) and the above discussion. Briefly, however, in regard to Mr. Gatbonton deposition, in using the caption of this case and deposing him under this Court's jurisdiction—but identifying the deposition as a EUO in order to skirt the discovery deadlines—was committing a fraud upon the Court. Plaintiffs knew discovery closed months earlier and during the year of discovery, made no attempt to depose Mr. Gatbonton. Plaintiffs' pattern of disregard and dilatory behavior violate numerous rules of civil procedure, rules of professional conduct, and amount to abuse of judicial process.

Further, Plaintiffs submitted Thomas Jackson's sham affidavit in bad faith to create a triable issue of fact in response to Defendant's Motion for Summary Judgment. The affidavit explicitly contradicts Thomas Jackson's earlier testimony rather than clarifying. As such, by submitting that affidavit, Plaintiffs intentionally committed fraud upon the Court.

Finally, Plaintiffs' continued pattern of dilatory conduct and disregard for the rules of civil procedure and this Court's orders amounts to abuse of the judicial process. This is not a case where Plaintiffs made one innocent mistake. Rather, Plaintiffs barely conducted any discovery

- 26 -

BARRON & PRUITT, LLP
ATTORNEYS AT LAW
3890 WEST ANN RD.
NORTH LAS VEGAS, NEVADA 89031
TELEPHONE (702) 870-3940
FACSIMILE (702) 870-3950

during the extended discovery period. Then, after discovery closed, Plaintiffs motioned the Court numerous times to extend to do limited discovery of deposing experts and deposing Master Janitorial. The Court showed extensive patience with Plaintiffs' dilatory behavior. However, despite the extensions, Plaintiffs never deposed any of Defendant's experts or Master Janitorial.

Plaintiffs wasted the entire year-long discovery period doing little to nothing and apparently only after discovery, realized it. They then proceeded to take a deposition, request Carol Jackson's medical records, produce thousands of pages of documents, identify numerous additional treatment providers, and finally produce a computation. Plaintiffs' obstructive, abusive and dilatory behavior in ignoring this Court's scheduling orders, coupled with their intent to deceive the Court by submitting a false affidavit and deposing Mr. Gatbonton—all at the prejudice of Defendant—warrant dismissal.

### III.   CONCLUSION

Defendant requests the Court enter one or more of the sanctions for Plaintiffs' willful violations of discovery orders and disregard for rules of civil procedure:

1. To strike Plaintiffs' Complaint and dismiss this action against Defendant under the authority of FRCP 37 (b) (2) (A) (iii) & (v) and Rule 16 (f) for:

   a. Plaintiffs' flagrant violation of the Court's October 5, 2010, January 31, 2011 and May 13, 2011 Orders;

   b. Plaintiffs' willful misrepresentations to the Court taking a deposition after the close of discovery and trying to disguise it as an EUO;

   c. Plaintiffs' violation of Defendant's due process rights; and

   d. Plaintiffs' abuse of process.

2. In the alternative to dismissal, due to Plaintiff's submission of Thomas Jackson's sham affidavit, strike the affidavit under the sham affidavit rule and preclude Plaintiffs from contesting under the authority of FRCP 37 (b) (2) (A) (i) and (ii) that Mr. Jackson did not observed any substance on the floor either prior to or after reporting it to Defendant's employees.

3.  In the alternative to dismissal, pursuant FRCP 37(c), to preclude Plaintiffs from presenting at trial testimony from witnesses, including the custodian of records or persons most knowledgeable, from the providers that were not properly identified pursuant Rule 26(a)(1)(A)(i) during discovery: American Medical Response; Arshad Iqbal, M.D.; B.O.N. Clinical Laboratories; CareMeridian, LLC; Catalyst Rx; Ghulam H. Kasef, M.D. and Comprehensive Cancer Center; David Miller, M.D.; Laurie Larsen; Nevada imaging Centers; PBS Anaesthesia and all providers at that facility; Preferred Homecare; Spring Valley Hospital; Sonoram Medical Imaging; and University of Nevada School of Medicine and Dr. Ginsberg.

4.  In the alternative to dismissal, pursuant FRCP 37 (c), to preclude Plaintiffs from presenting any evidence through medical records that were disclosed after the close of discovery; specifically, all records produced in Plaintiffs' Second, Third, Fourth, Fifth, Sixth and any additional supplemental disclosures;

5.  In the alternative to dismissal, pursuant FRCP 37 (c), strike Plaintiffs' damage claims and/or preclude Plaintiffs from introducing damage evidence at trial based on their failure to timely disclose a computation of damages and failure to disclose the method or formula used to calculate such damages;

6.  In the alternative to dismissal, strike Plaintiffs' claims for past medical damages as Plaintiffs are not the real parties in interest for such damages and are not entitled to recover such amounts;

7.  In the alternative to dismissal, to strike the deposition transcript of Mr. Gatbonton and preclude him from testifying at trial;

8.  In the alternative to dismissal, to stay motion practice pending the Court's decision on Defendant's Motion for Sanctions. FRCP 37 (b) (2) (A) (iv);

9.  For monetary sanctions for attorneys fee and costs incurred by Defendant in relation to this Motion for Sanctions. FRCP 37 (b) (2) (C) and FRCP 56(h); and,

/ / /

/ / /

BARRON & PRUITT, LLP
ATTORNEYS AT LAW
3890 WEST ANN RD.
NORTH LAS VEGAS, NEVADA 89031
TELEPHONE (702) 870-3940
FACSIMILE (702) 870-3950

1    10. For any contempt considerations the Court may wish to entertain. FRCP 37(b) (2) (A)

2        (vii).

3                                       BARRON & PRUITT, LLP

4

5                                       David Barron, Esq.
6                                       Nevada Bar No. 0142
                                        Chelsea Pyasetskyy, Esq.
7                                       Nevada Bar No. 11688
                                        3890 West Ann Road
8                                       North Las Vegas, NV 89031
                                        *Attorneys for Defendants*
9                                       *United Artists Theatre Circuit, Inc.*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BARRON & PRUITT, LLP
ATTORNEYS AT LAW
3890 WEST ANN RD.
NORTH LAS VEGAS, NEVADA 89031
TELEPHONE (702) 870-3940
FACSIMILE (702) 870-3950