1

2

3

4

5  **UNITED STATES DISTRICT COURT**

6  **DISTRICT OF NEVADA**

7

8  THOMAS JACKSON and CAROL JACKSON,          )
                                              )
9                        Plaintiffs,          )          Case No.  2:10-cv-00050-LDG-GWF
                                              )
10  vs.                                       )          **ORDER**
                                              )
11  UNITED ARTISTS THEATRE CIRCUIT, INC.,     )
    d/b/a UA RAINBOW PROMENADE,               )          **Defendant's Motion for Sanctions**
12                                            )          **(#77)**
                         Defendants.          )
13  _____ )

14          This matter is before the Court on Defendant's Motion for Sanctions (#77), filed on October

15  20, 2011; Plaintiffs' Opposition to the Motion for Sanctions (#81), filed on November 7, 2011; and

16  Defendant's Reply in Support of its Motion for Sanctions (#82), filed on November 16, 2011.  The

17  Court conducted a hearing in this matter on December 1, 2011.

18          Defendant moves for sanctions on the grounds that Plaintiffs failed to timely disclose all of

19  Plaintiff Carol Jackson's treating physicians and medical providers, failed to timely produce

20  medical records and bills and failed to timely provide a computation of their alleged damages.

21  Defendant also moves for sanctions on the grounds that Plaintiff took an "ex-parte deposition" of a

22  witness after discovery ended and that the "deposition" was taken by a non-attorney in violation of

23  rules that prohibit non-attorneys from engaging in the practice of law.  Defendants have also sought

24  sanctions in regard to other matters which the Court concludes are not appropriate issues to be

25  decided on the instant motion.

26                                    **BACKGROUND**

27          This case involves a negligence action in which Plaintiffs Carol Jackson and Thomas

28  Jackson seek the recovery of damages for bodily injuries and loss consortium.  Carol Jackson

allegedly slipped on a substance, believed to be popcorn butter oil, in Defendant's movie theatre on February 29, 2008 and injured her neck, back and shoulder. At the time of the accident, Ms. Jackson was 55 years old. She had been diagnosed with multiple sclerosis ("MS") more than twenty years before the subject accident and had received medical treatment for MS and other physical ailments for many years. Ms. Jackson retired from her employment with the State of Nevada in 2000 due to disability. Ms. Jackson was injured in prior accidents, including a work-related accident in 1987 and a motor vehicle accident in 1995. Ms. Jackson was also involved in a motor vehicle accident on November 30, 2007 in which she injured her neck, back and extremities. She was still receiving medical treatment for the injuries caused by that accident when the subject accident occurred on February 29, 2008.

Ms. Jackson underwent lumbar spine discectomy and fusion surgery in June 2009 and cervical spine discectomy and fusion surgery in January 2010. She experienced complications following the cervical spine surgery and underwent follow-up surgeries in January and February 2010. The accident injuries and resulting surgeries allegedly aggravated Ms. Jackson's MS and rendered her more physically disabled than she was prior to the accident(s).

Plaintiffs filed suit against Defendant United Artists in the Nevada District Court on December 9, 2009. The Defendant removed the action to this Court on January 13, 2010. Defendant stated in its removal notice that "Plaintiffs have allegedly incurred medical expenses of at least $851,167.82." *Petition for Removal (#1)*, ¶ 7. In support of this allegation, Defendant attached a letter from the administrator for Plaintiff's health insurance provider, together with print-outs listing the medical charges and payments made by Plaintiffs' health insurer. *Id., Exhibit A.*

Plaintiffs served their Rule 26 Initial Disclosures on February 17, 2010. *Motion for Sanctions (#77), Exhibit A, "Initial Disclosures."* Plaintiffs listed numerous physicians or health care providers as individuals with relevant information whom they may call as witnesses. Plaintiffs also identified the medical records and bills of the listed physicians and health care providers as documents they may use in support of their claims. Although the Initial Disclosures stated that these documents were in Plaintiffs' "custody," Plaintiffs and their counsel had not actually obtained the medical bills and records at the time they made their initial disclosures. The Initial Disclosures

1   stated that the medical records and bills would be provided.  Under the heading "Computation of
2   Damages," the Initial Disclosure stated that "Plaintiff does not have yet this information available,
3   and will provide it when supplemented." *Plaintiffs' Initial Disclosures, p. 7.*

4   The discovery plan and scheduled order was entered on March 10, 2010 and set a discovery
5   cut-off date of November 15, 2010.  The Court granted an extension of  discovery in October 2010
6   and set a new general discovery cut-off date of February 14, 2011.  *See Stipulation and Order*
7   *(#22).*  The Court thereafter granted limited extensions of discovery to complete expert witness
8   depositions and for Plaintiffs to take the deposition of a janitorial services company.  *Orders (#33*
9   *and #50).*

10   Plaintiff Carol Jackson served her answers to Defendant's interrogatories on April 26, 2010.
11   *Motion to Compel (#77), Exhibit D.*  Interrogatory No. 8 asked Ms. Jackson to identify and describe
12   all injuries, ailments, or symptoms she experienced as a result of the subject accident, the treatment
13   she received and the extent of her recovery.  Ms. Jackson answered this interrogatory by describing
14   her injuries, and identifying the principal physicians who provided medical treatment to her and the
15   types of treatment provided.  Interrogatory No. 10 asked Ms. Jackson to list each doctor, physician,
16   chiropractor, therapist, psychiatrist or other health care professional who examined, treated or
17   consulted with her since the subject accident.  Ms. Jackson answered this interrogatory by listing all
18   of the physicians and health care providers previously listed in Plaintiffs' Initial Disclosures as well
19   as some additional physicians or health care providers who had not previously been disclosed.  Ms.
20   Jackson also answered interrogatories regarding other illnesses and ailments, including MS, for
21   which she had received medical treatment, and interrogatories regarding the medical treatment she
22   received for injuries in prior accidents.  *See* Plaintiff's Answers to Interrogatory Nos.  11, 12, 13,
23   14, and 15.

24   Ms. Jackson served her responses to Defendant's requests for production of documents on
25   May 12, 2010.  *Motion to Compel (#77), Exhibit A, Responses to Requests for Production.*  Request
26   No. 2 requested production of "any and all medical records, current or otherwise, pertaining to any
27   care and/or treatment of Plaintiff Carol Jackson for the past ten (10) years."  Ms. Jackson responded
28   to this request by stating:

3

> Plaintiff does not have medical billings or documentation in her
> possession responsive to this request.  Please see Plaintiff's FRCP
> Rule 26 Disclosures and Plaintiff Carol Jackson's Responses to
> Defendant's Interrogatories, previously presented, for a list of
> providers.  Plaintiff is currently in the process of gathering medical
> records and billings, and will supplement accordingly when received.
> Plaintiff reserves the right to amend this response, as discovery is
> proceeding.

*Id., Responses to Requests for Production, p. 2.*

In response to Defendant's requests for medical records relating to treatment of Ms. Jackson's MS or other medical conditions, Plaintiff also responded that she did not have any items that are responsive to this request in her possession, but that she would provide such items if they came into her possession.  *See* Plaintiff's Response to Request No. 10.

Plaintiffs provided Defendant's counsel with signed authorizations to obtain Ms. Jackson's medical records and bills directly from the physicians and other health care providers.  As evidenced by Defendant's supplemental Rule 26 disclosures, it used the authorizations to obtain most of the medical records of the physicians and health care providers identified by Plaintiffs in their initial disclosures and answers to interrogatories.  *Opposition to Motion for Sanctions (#81), Exhibits 6-1 through 6-11.*  Defendant provided Ms. Jackson's medical records, as well as the depositions of her treating physicians–Dr. Thorp, Dr. LaTourette, Dr. Grover and Dr. David Miller–to its biomechanical expert Richard Harding and to its consulting neurologist Dr. Kurt V. Miller for review and evaluation. *Opposition to Motion for Sanctions (#81), Exhibits 4* and *5.*

Plaintiffs served their First Supplement to Rule 26 Disclosures on February 14, 2011, the last day of discovery.  *Motion for Sanctions (#81), Exhibit G.*  Plaintiffs listed the same physicians and other health providers that were listed in their Rule 26 Initial Disclosures.  Plaintiffs also identified the medical records and bills of the listed physicians and providers as  documents they may use to support their claims and again indicated that these records were "to be provided."  It is undisputed that Plaintiffs did not directly provide Defendants with copies of any medical records or bills prior to the close of discovery.  Plaintiffs' First Supplement to Rule 26 Disclosures also did not provide a computation of damages on the grounds that the information needed to provide the computation was not yet available.

4

Plaintiffs served their Second Supplement to Rule 26 Disclosures on June 6, 2011.  *Exhibit H.*  Plaintiffs attached a copy of a January 25, 2011 letter from Plaintiff's surgeon, Dr. Grover, regarding Ms. Jackson's condition as of that date.  The Second Supplement was otherwise unchanged from the First Supplement.  Plaintiffs served a Third Supplement to Rule 26 Disclosures on July 19, 2011.  *Exhibit I.*  Plaintiffs attached to this supplement a computation of Plaintiff Carol Jackson's special damages for past and future medical expenses and her general damages for past and future pain and suffering.  According to this computation, Ms. Jackson claimed past medical expenses in excess of $880,000, plus future medical expenses in the estimated amount of $864,013.00.  Ms. Jackson's future medical expense claim is based on the opinions of Plaintiffs' economic and life care plan experts whose reports and opinions were provided during discovery.  Plaintiffs also stated the amount of Plaintiff Thomas Jackson's general damage claim for loss of consortium.  Plaintiffs state that Mr. Jackson has no claim for recovery of medical expenses or other special damages.

On August 16, 2011, Plaintiffs served their Fourth Supplement to Rule 26 Disclosures.  *Exhibit K.*  With this Supplement, Plaintiffs produced compact discs that contained the medical records of Ms. Jackson.  On August 26, 2011, Plaintiffs served their Fifth Supplement to Rule 26 Disclosures which included the medical bills identified in the disclosure.  *Exhibit M.*  The Fifth Supplement also provided an amended computation of damages which asserted that Ms. Jackson's past medical expenses are in excess of $1,380,000.00.  Plaintiffs also added a calculation of prejudgment interest to the past damages claimed by both Plaintiffs.

Defendant contends that Plaintiffs identified fifteen (15) medical providers in their Fourth and Fifth Supplements to their Rule 26 Disclosures who were never previously disclosed.  *See Motion for Sanctions (#77), p. 11.*  It appears, however, that eight of the physicians or providers listed by Defendant were, in fact, disclosed by Plaintiffs and/or their records were obtained by Defendant during discovery.  Plaintiff argues that there were, at most, only two or three providers who were not disclosed during discovery.

The Court now turns to Defendant's allegation regarding the taking of an "ex-parte deposition."  Defendant's answers to Plaintiff's First Set of Interrogatories served on September 28,

2010, stated that Archie Gatbonton, a former theatre employee, "conducted inspections in Auditorium #7 prior to the theatre opening on the date of the subject incident and after the first showing of 'No Country for Old Men.'" *See Defendant's Motion for Summary Judgment (#61), Exhibit K, Answer to Interrogatory No. 21.* Neither party attempted to take Mr. Gatbonton's deposition prior to the close of discovery. Defendant filed its Motion for Summary Judgment (#61) on June 13, 2011. In that motion, Defendant argues that there is no evidence that Defendant knew or should have known of the presence of the alleged foreign substance prior to Ms. Jackson's alleged accident. Plaintiffs filed their Opposition to Defendant's Motion for Summary Judgment (#69) on July 7, 2011 and attached, as Exhibit 1 thereto, a "Certified Transcript" of the "Examination Under Oath of Archibald Gatbonton" (hereinafter the "examination") in support of their argument that Defendant was on notice of the foreign substance prior the accident and/or that Defendant's employees negligently failed to clean the theatre prior to Plaintiff's accident.

According to the transcript of the examination, Robert Clymer, a private investigator employed by Plaintiffs' counsel, conducted the examination of Mr. Gatbonton on July 6, 2011. Plaintiffs' attorney Judy Cox, Esq. was also present during the examination and asked questions or interjected comments during the examination. The examination was reported by a certified court reporter who administered an oath to tell the truth to Mr. Gatbonton. Because Mr. Gatbonton is deaf, the questions were interpreted for him by an American Sign Language Interpreter who, in turn, translated his sign language responses into the English language. The court reporter prepared the transcript of the examination which Plaintiffs submitted in support of their Opposition to Defendant's Motion for Summary Judgment. Plaintiffs' counsel represents that this method of presenting Mr. Gatbonton's testimony was used because of the language barrier involved and the need to expeditiously obtain his testimony for the opposition to the motion for summary judgment.

## DISCUSSION

The Court will decide only those matters raised in Defendant's Motion for Sanctions that are properly before the Court under Rule 37 of the Federal Rules of Civil Procedure or which fall within the scope of the Court's inherent powers to enforce the discovery rules. The undersigned Magistrate Judge will not consider Defendant's motion to strike Ms. Jackson's claim for recovery

of medical expenses on the grounds that the health insurer is the real party in interest. To whatever

extent that argument has merit, it should have been raised by motion for summary judgment. Nor

will the undersigned consider Defendant's argument that Plaintiff Thomas Jackson should be

sanctioned for submitting a "sham" affidavit in opposition to Defendant's motion for summary

judgment. In ruling on that motion, the District Judge should decide whether Mr. Jackson's

affidavit is a "sham." There is no reason for the undersigned to also weigh in on this issue.

The Court will decide whether the examination of Mr. Gatbonton constituted a deposition

taken in violation of Rule 30 or the scheduling order, and whether it violated the laws prohibiting

non-lawyers from practicing law. The District Judge, however, should decide whether other

alleged defects in the examination, including the alleged lack of qualified interpreters, renders the

Mr. Gatbonton's testimony inadmissible for purposes of opposing Defendant's motion for

summary judgment.

> **1.    Defendant's Request for Sanctions Under Rule 37(c) Based on Plaintiffs' Failure to Make the Disclosures Required Under Rule 26(a)(1)(A)and (e).**

Defendant argues that Plaintiffs should be sanctioned under Rule 37(c) of the Federal Rules

of Civil Procedure for their failure to disclose witnesses, documents and a computation of damages

as required by Rule 26(a)(1)(A) and (e)(1).

Rule 26(a)(1)(A) states:

> . . . [A] party must, without awaiting a discovery request, provide to the other parties:

> (I)    the name and, if known, the address and telephone number of each individual likely to have discoverable information–along with the subjects of that information–that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment;

> (ii)    a copy–or a description by category and location–of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment;

> (iii)    a computation of each category of damages claimed by the disclosing party–who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from

7

1
2

> disclosure, on which each computation is based, including
> materials bearing on the nature and extent of injuries
> suffered[.]

3      Rule 26(a)(1)(C) requires a party to serve his or her initial disclosures, including the

4   computation of damages, within 14 days after the parties' Rule 26(f) conference.  Rule 26(e)(1)(A)

5   states that a party must supplement or correct its disclosures or discovery responses "in a timely

6   manner if the party learns that in some material respect the disclosure or response is incomplete or

7   incorrect, and if the additional or corrective information has not otherwise been made known to the

8   other parties during the discovery process or in writing."

9      The disclosure requirements of Rule 26(a)(1)(A) are designed to accelerate the exchange of

10   basic information and "'help focus the discovery that is needed, and facilitate preparation for trial

11   or settlement.' *See* Advisory Committee Notes to 1993 Amendments to Fed.R.Civ.P. 26(a)."

12   *Sender v. Mann*, 225 F.R.D. 645, 650 (D.Colo.2004).  The disclosure requirements "should 'be

13   applied with common sense in light of the principles of Rule 1, keeping in mind the salutary

14   purposes that the rule is intended to accomplish. The litigants should not indulge in gamesmanship

15   with respect to the disclosure obligations.' *See* Advisory Committee Notes to 1993 Amendments to

16   Fed.R.Civ.P. 26(a)."  *Sender*, 225 F.R.D. at 650.

17      Plaintiffs' Rule 26 Initial Disclosures listed 44 physicians or health care providers.  Plaintiff

18   Carol Jackson listed several additional physicians and health care providers in her answers to

19   interrogatories which were served four and half months prior to the close of discovery.  This

20   additional disclosure satisfied the requirements of Rule 26(a)(1)(A) and (e), although for clarity's

21   sake, the additional physicians and health care providers should also have been listed in Plaintiffs'

22   First Supplement served on the last day of discovery.

23      Plaintiffs' counsel made no adequate effort to obtain copies of Ms. Jackson's medical

24   records and bills and make them available to the Defendant for copying or inspection prior to the

25   close of discovery.  Plaintiffs argue that they had no obligation to do so under Rule 26(a)(1)(A)(ii).

26   Plaintiffs rely on *Forbes v. 21ˢᵗ Century Ins. Co.*, 258 F.R.D. 335 (D.Ariz. 2009), in which the court

27   stated that the duty to disclose documents under Rule 26(a)(1)(A)(ii) is not synonymous with a duty

28   to produce.  *Forbes* stated that "[w]hile some sections of Rule 26 require information to be both

disclosed and produced, Rule 26(a)(1)(A)(ii) only requires parties to provide notice regarding documents that they may use to support their claims or defenses. *See also Washam v. Evans*, 2011 WL 2559850, at *2 (E.D.Ark. 2011), and *Perfumania, Inc. v. Fashion Outlet of Las Vegas, LLC*, 2006 WL 3040914, at *2 (D.Nev. 2006). Plaintiffs argue that they complied with Rule 26(a)(1)(A)(ii) by identifying the medical records and bills of the physicians and health care providers in their Rule 26 Initial Disclosures and in Ms. Jackson's answers to interrogatories.

Plaintiffs also argue that they complied with Rule 34 of the Federal Rules of Civil Procedure by providing Defendant with signed authorizations to obtain Ms. Jackson's medical records and bills directly from the providers. Rule 34(a)(1) states that a party may serve on any other party a request "to produce and permit the requesting party or its representative to inspect, copy, test, or sample [documents] in the responding party's possession, custody or control." Rule 34 does not require the responding party to provide copies of documents. The responding party complies with the rule by making the documents available for inspection and copying by the requesting party. *See Tierno v. Rite Aid Corp.*, 2008 WL 3876131 (N.D.Cal. 2008), *Braun v. Agri-Systems*, 2006 WL 278692 (E.D.Cal. 2006), and *Border Collie Resc. v. Ryan*, 2005 WL 30766, at *1 (M.D.Fla. 2005).

The Court finds that under the circumstances of this case, Plaintiffs did not violate their disclosure obligation under Rule 26(a)(1)(A)(ii) or their duty to produce relevant documents for inspection and copying under Rule 34. Nothing in these rules prohibits a plaintiff from voluntarily providing, and a defendant from accepting, a signed medical authorization so that the defendant can obtain the plaintiff's medical records and bills directly from the providers. (A defendant may prefer this method to make sure that it obtains complete medical records.) Defendant never demanded that Plaintiff actually produce medical records and bills for copying and inspection by Defendant. Nor did Defendant file a motion to compel production of medical records and bills pursuant to Rule 34. Plaintiffs are therefore not subject to sanctions under Rule 37(b) for failing comply with an order that they produce documents pursuant to Rule 34.

Plaintiffs, however, ignored their obligation under Rule 26(a)(1)(A)(iii). This rule requires a party to provide "a computation of each category of damages claimed by the disclosing party." It

also requires the disclosing party to "make available for inspection and copying as under Rule 34 the documents or other evidentiary material . . . on which each computation is based, including materials bearing on the nature and extent of injuries suffered."  While a party may not have all of the information necessary to provide a computation of damages early in the case, it has a duty to diligently obtain the necessary information and prepare and provide its damages computation within the discovery period.  *See Allstate Ins. Co. v. Nassiri*, 2010 WL 5248111, *4 (D.Nev. 2010).[1]

The plaintiff cannot shift to the defendant the burden of attempting to determine the amount of the plaintiff's alleged damages.  *See Design Strategy, Inc. v. Davis*, 469 F.3d 284, 294-95 (2nd Cir. 2006).  In *Francois v. Colonial Freight Systems, Inc.*, 2007 WL 4564866, at *3 (S.D.Miss. 2007), the court rejected the plaintiffs' argument that sanctions under Rule 37(c) were not warranted because defendant was provided a "medical waiver" and, therefore, could have obtained plaintiff's medical records and bills.  The court found that this argument lacked merit because Rule 26(a)(1)(A)(iii) specifically requires the plaintiff to provide a computation of each category of damages and make the documents on which each computation is based available for inspection and copying.  Rule 26(a)(1)(A)(iii) would be rendered meaningless if a party could avoid its requirements by not obtaining the documents or information needed to prepare the damages computation.

Rule 37(c)(1) states that if a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply

---

[1] Plaintiffs argue that Rule 26(a)(1)(A)(iii) does not require a computation of general damages for pain and suffering or emotional distress because such damages are subjective and do not lend themselves to computation.  *See Williams v. Trade Publishing Co.*, 218 F.3d 481, 486 n. 3 (5th Cir. 2000); *Crocker v. Sky View Christian Academy*, 2009 WL 77456, *2 (D.Nev. 2009), and *Sherwin v. Infinity Auto Ins. Co.*, 2011 WL 4458838 (D.Nev. 2011).  Plaintiffs also argue that to the extent Defendant is entitled to know the amount of general damages claimed by Plaintiffs, that information has now been provided and Defendant has not been harmed by the failure to disclose it earlier.  The Court agrees with these arguments and considers the imposition of Rule 37(c) sanctions only in regard to Plaintiffs' failure to provide a timely computation of Ms. Jackson's medical expense damages.

evidence at trial unless the failure was substantially justified or is harmless.  The rule also states that "in addition to or instead of this sanction," the court may order payment of reasonable expenses, including attorney's fees caused by the failure, and may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(I)-(v).  The burden is upon the disclosing party to show that the failure to disclose information or witnesses was justified or harmless.  *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1107 (9th Cir. 2001).

Rule 37(c)(1) does not require the court, in all instances, to exclude evidence as a sanction for a late disclosure that is neither justified nor harmless.  *See Design Strategy, Inc. v. Davis,* 469 F.3d at 296, 298, and *Allstate Ins. Co. v. Nassiri*, 2011 WL 2977127, *5-6 (D.Nev. 2011).  In *Wendt v. Host International, Inc.,* 125 F.3d 806, 814 (9th Cir.1997), the Ninth Circuit identified several factors that the district court may consider in deciding whether to impose Rule 37(c)(1)'s exclusion sanction.  Those factors include (1) the public's interest in expeditious resolution of litigation, (2) the court's need to manage its docket, (3) the risk of prejudice to the other parties, (4) the public policy favoring disposition of cases on their merits, and (5) the availability of less drastic sanctions.  Although a finding of willfulness or bad faith is not required in order to impose the evidence preclusion sanction, willfulness or bad faith is clearly a factor in deciding the appropriate level of sanction. *See also AZ Holding, L.L.C. v. Frederick,* 2009 WL 2432745, *5 (D.Ariz. 2009); *Park v. Cas Enterprises, Inc.,* 2010 WL 55888, *4 (S.D.Cal. 2010); *Galentine v. Holland America Line–Westours, Inc.,* 333 F.Supp.2d 991, 995 (W.D.Wash. 2004); *F.D.S. Marine, LLC v. Brix Maritime Co.,* 211 F.R.D. 396, (D.Or. 2001); and *Lindner v. Meadow Gold Dairies, Inc.,* 249 F.R.D. 625, 642 (D.Haw. 2008).

Courts are more likely to exclude damages evidence when a party first discloses its computation of damages shortly before trial or substantially after discovery has closed. *CQ Inc. v. TXU Mining Company,* 565 F.3d 268 (5th Cir. 2009); *24/7 Records v. Sony Music Entertainment,* 566 F.Supp.2d 305, 318 (S.D.N.Y. 2008); and *Green Edge Enterprises, LLC v. Rubber Mulch Etc. LLC,* 2009 WL 1383275 (E.D.Mo. 2009).  In *Hoffman v. Construction Protection Services*, 541 F.3d 1175 (9th Cir. 2008), the Ninth Circuit affirmed the district court's order excluding plaintiffs' damages evidence because they failed to provide any computation of damages prior to the pretrial

11

conference.  The court stated that the late disclosure was not harmless because it would have most

likely required the trial court to create a new briefing schedule and perhaps re-open discovery,

rather than simply set a trial date.

Plaintiffs have not shown any justification for their failure to provide a computation of

Plaintiff Carol Jackson's special damages prior to the close of discovery on February 14, 2011.

The issue, therefore, is whether the failure was harmless and if not, what sanction should be

imposed.  Defendant has been aware from the outset of this lawsuit that Plaintiffs are seeking

substantial medical expenses damages allegedly related to the treatment of injuries caused by the

accident.  Defendant's removal petition stated that "Plaintiffs have allegedly incurred medical

expenses of at least $851,167.82."  Plaintiffs' Initial Rule 26 Disclosures and Ms. Jackson's

answers to interrogatories identified almost all of the medical providers who allegedly provided

medical care or treatment for her injuries.  Defendant's counsel was able to obtain the medical

records and bills that they needed to depose Ms. Jackson's  physicians and to provide records to

their experts for review in preparing their opinions in this case.  It is the Court's understanding that

Defendant contends that most of the medical treatment that Ms. Jackson received after February 29,

2008 is not causally related to the injuries she allegedly sustained in the accident.  Other than some

limited harm that might result from the failure to disclose a few medical providers, Defendant has

not been unduly surprised or harmed by Plaintiffs' failure to timely disclose their damages

computation and supporting documentation.

Although Plaintiffs' computation of damages was provided long after it should have been

disclosed, this case is still in the summary judgment phase.  The joint pre-trial order is not yet due

and a trial date has not been set.  Unlike *Hoffman*, the late disclosure of Plaintiffs' damages

computation does not require that discovery be reopened and will not delay trial.  Plaintiffs'

violation of Rule 26(a)(1)(A) therefore does not warrant the severe sanction of dismissal or an

order that precludes Plaintiffs from introducing any evidence in support of Ms. Jackson's claim for

medical expenses.

The Court nevertheless concludes that some sanction should be imposed on Plaintiffs'

counsel for their unjustified failure to provide a computation of damages prior to the close of

1   discovery.  This is not the first case in which sanctions have been sought or imposed because of

2   Plaintiffs' counsel's failure to comply with Rule 26(a)(1)(A)(iii).  *See Igbinovia v. Catholic*

3   *Healthcare West, et al.*, United States District Court for the District of Nevada, Case No. 2:07-cv-

4   01170-GMN-GWF, Order (#61), filed on March 4, 2010.  The appropriate sanction in this case is

5   to exclude the testimony and medical records and bills of any physician or health care provider

6   whose identity and records could have been disclosed prior to the close of discovery, but which

7   were not disclosed.  Because it is not clear which physicians or health care providers were not so

8   disclosed, the Court directs the parties to further meet and confer and submit a proposed stipulation

9   and order, or if they cannot agree, supplement their respective briefs on this matter.  As discussed

10  during the hearing, this order is not intended to exclude the records or bills of medical providers

11  such as anesthesiologists, whose identities and records were disclosed in Plaintiff's hospital

12  records.

13       The Court will also award Defendant reasonable attorney's fees and costs in pursuing the

14  motion for sanctions relating to Plaintiffs' failure to comply with Rule 26(a)(1)(A)(iii).  Because

15  the failure to comply was clearly the fault of counsel and not the party, the award of attorney's fees

16  will be imposed on Plaintiffs' counsel.

17          **2.      Whether Plaintiffs Should be Sanctioned for Taking an "Ex-Parte
                    Deposition" or Engaging in the Unauthorized Practice of Law With**

18          **Respect Thereto.**

19       The examination of witness Archibald Gatbonton did not constitute a deposition taken in

20  violation of Rule 30 of the Federal Rules of Civil Procedure or the scheduling order in this case.

21  Mr. Gatbonton was disclosed as a potential witness by Defendant during the discovery period.

22  Either party could have taken his deposition, but neither did so.  Mr. Gatbonton was a non-

23  managerial employee of the Defendant and Plaintiffs' counsel was not barred from engaging in *ex*

24  *parte* communication with him.  *See Palmer v. Pioneer Inn Associates, Ltd.*, 118 Nev. 943, 948, 59

25  P.3d 1237, 1240 (2002).  Nothing in the Federal Rules of Civil Procedure barred Plaintiffs' counsel

26  from obtaining Mr. Gatbonton's affidavit or its equivalent after the close of discovery for purposes

27  of opposing Defendant's motion for summary judgment.

28       In *Curnow v. Ridgecrest Police*, 952 F.2d 321 (9th Cir. 1991), the plaintiffs submitted a

sworn statement by the decedent's ex-wife in opposition to the defendant's motion for summary judgment.  The statement was taken before a shorthand reporter who administered an oath to the ex-wife.  The defendant was not provided with notice of the taking of the statement, however, and it did not constitute a deposition within the meaning of Rules 30 and 32.  The court stated that under Rule 56(c), a party may oppose a motion for summary judgment by materials in the record, including depositions, answers to interrogatories, admissions and affidavits. *Id.* 952 F.3d at 323-4.  In holding that the sworn statement was admissible for purposes of opposing summary judgment, the court, quoting *In re Sunset Bay Associates*, 944 F.2d 1503, 1510 (9th Cir. 1991), stated:

> "Because there is no reason to believe that the sworn answers to questions are less reliable than an affidavit, to the extent that the content of the deposition testimony is otherwise admissible, that testimony should be admissible on summary judgment."

   *See also Parra v. Bashas' Inc.*, 2005 WL 612338, *12 (D.Ariz. 2005) and *Tucker v. United States*, 2011 WL 1380248, *3 (N.D.W.Va. 2011).

   In *Tucker v. United States*, the plaintiff submitted sworn witness statements obtained by plaintiff's counsel's investigator in support of his opposition to the government's motion for summary judgment.  The statements were obtained prior to the depositions of the witnesses and appeared to contradict their deposition testimony.  Relying on *Curnow,* the court treated the sworn statements as the equivalent of affidavits for purposes of determining whether there was a genuine issue of material fact.

   Defendant argues that Plaintiffs' counsel's private investigator engaged in the unauthorized practice of law by questioning Mr. Gatbonton during the examination or "*ex-parte* deposition."  Non-attorneys are generally not permitted to appear in court or participate in judicial proceedings as the legal representative of a party or another person.  *See Harrington v. City of Chicago*, 433 F.3d 542, 549 (7th Cir. 2006) (holding that district court properly forbade a paralegal from participating in a court status conference because the practice of law includes appearances in court).  Although depositions are taken outside of court, they are governed by the Federal Rules of Civil Procedure and Federal Rules of Evidence, and may be used at trial in the same manner as live testimony if the witness is unavailable.  Fed.R.Civ.Pro. 32(a)(1).  The taking of a deposition has been held to

constitute the practice of law under a state statute prohibiting the unauthorized practice of law.  *See State v. Foster*, 674 So.2d 747 (Fla.App. 1996).  Plaintiffs, however, have not offered Mr. Gatbonton's examination as a deposition.  Nor would the examination be admissible as a deposition at trial pursuant to Rule 32(a) because Defendant was not notified of the examination and had no opportunity to attend or cross-examine Mr. Gatbonton.

The Nevada Supreme Court in  *In re Lerner*, 124 Nev. 1232, 1236, 197 P.3d 1067 (2008) cited several general definitions of the term "the practice of law," including the Ninth Circuit's definition in *Taub v. Weber*, 366 F.3d 966, 970 (9th Cir. 2004) that the "'practice of law' means the exercise of professional judgment in applying legal principles to address another person's individualized needs through analysis, advice or other assistance.'" *Lerner*, 124 Nev. at 1239, 197 P.3d at 1072-73.  The Nevada Court also stated, however, that application of this definition is highly fact-specific and is not susceptible to a bright-line, broadly stated rule.

Taking a sworn factual statement from a witness does not *per se* involve the exercise of professional legal judgment sufficient to constitute the practice of law.  Recorded witness statements are often obtained by investigators or other non-lawyer assistants acting on behalf of attorneys, either before or after the commencement of litigation.  It would unduly impair the efficient practice of law if such statements could only be taken by attorneys.  Arguably, the taking of ex-parte testimony, whether by affidavit or questioning under oath, should be supervised by the attorney when it is obtained for the specific purpose of being submitted in support of or in opposition to a motion for summary judgment.  In this case, one of Plaintiffs' attorneys was present during the examination of Mr. Gatbonton and interjected clarifying questions or comments at various points during the examination.  The presence of counsel fulfilled any required duty of supervision in the taking of the statement.  There is no basis to conclude, therefore, that Ms. Gatbonton's testimony was obtained in violation of the rules prohibiting the practice of law by non-attorneys.

## CONCLUSION

Based on the foregoing, the Court concludes that sanctions should be imposed for Plaintiffs' counsel's failure to provide a timely computation of Plaintiff Carol Jackson's claim for medical

expense damages, together with the supporting documentation, as required by Rule 26(a)(1)(A)(iii). Because the failure to provide the computation of damages was substantially harmless under the facts of this case, however, the severe sanctions sought by Defendant will not be imposed.  The Court denies Defendant's requests for sanctions relating to the examination of witness Archibald Gatbonton.  The Court also denies Defendant's request for sanction for other alleged misconduct by Plaintiffs on the grounds that the matters are not appropriate subjects for a motion for sanctions. Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion for Sanctions (#77) is **granted**, in part, and **denied**, in part, as follows:

1.     Plaintiffs may not introduce at trial the testimony or medical records or bills of any physicians or health care providers whose identities were not disclosed prior to the end of discovery on February 14, 2011.  The parties shall submit a proposed stipulation and order regarding the identities of any such physicians or providers.  If the parties are unable to agree, they may supplement their respective briefs, regarding the identities of the physicians or providers who were not disclosed by Plaintiffs during discovery.

2.     Defendant is awarded its reasonable attorney's fees and costs on the motion for sanctions relating to Plaintiffs' failure to comply with Rule 26(a)(1)(A)(iii).  Because the failure to comply was clearly the fault of Plaintiffs' counsel the award of attorney's fees as a sanction will be imposed on Plaintiffs' counsel.

3.     Counsel for Defendant shall, no later than 14 days from entry of this order, serve and file a memorandum, supported by the affidavit of counsel, establishing the amount of attorney's fees and costs incurred in the motion addressed in this order.  The memorandum shall provide a reasonable itemization and description of the work performed, identify the attorney(s) or other staff member(s) performing the work, the customary fee of the attorney(s) or staff member(s) for such work, and the experience, reputation and ability of the attorney performing the work.  The attorney's affidavit shall authenticate the information contained in the memorandum, provide a statement that the bill has been reviewed and edited, and a statement that the fees and costs charged are reasonable.

16

4.      Counsel for Plaintiffs shall have 14 days from service of the memorandum of costs and attorney's fees in which to file a responsive memorandum addressing the reasonableness of the costs and fees sought, and any equitable considerations deemed appropriate for the court to consider in determining the amount of costs and fees which should be awarded.

5.      Counsel for Defendant shall have 7 days from service of the responsive memorandum in which to file a reply.

6.      Defendant's motion for sanctions is otherwise denied.

DATED this 2nd day of December, 2011.


_____
GEORGE FOLEY, JR.
United States Magistrate Judge

17