**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | | |
|---|---|---|
| THOMAS JACKSON and CAROL JACKSON, | ) | |
| | ) | |
| Plaintiffs, | ) | Case No.  2:10-cv-00050-LDG-GWF |
| | ) | |
| vs. | ) | **ORDER** |
| | ) | |
| UNITED ARTISTS THEATRE CIRCUIT, INC., | ) | |
| d/b/a UA RAINBOW PROMENADE, | ) | |
| | ) | |
| Defendants. | ) | |

This matter comes before the Court on Plaintiffs' Supplemental Brief Regrading This Court's 12/5/11 Order Regarding Defendant's Motion for Sanctions (#93), filed on March 22, 2012 and United Artists' Supplemental Brief to Defendant's Motion for Sanctions and Opposition to Plaintiffs' Supplemental Brief (#100), filed on April 9, 2012.  On December 5, 2012, the Court granted, in part, Defendant's Motion for Sanctions (#77). (*See* #84.)  The Court found the "appropriate sanction in this case is to exclude the testimony and medical records and bills of any physician or health care provider whose identity and records could have been disclosed prior to the close of discovery, but which were not disclosed." (*Id.* at 13.)  The Court directed the parties to meet and confer and submit a proposed stipulation regarding which physicians or health care providers would be excluded.  After two separate attempts to reach an agreement, the parties were unable to do so.  The parties now submit this supplemental briefing to the Court.  The following physician or health care providers are in dispute: Catalyst Rx, CareMeridian, LLC, B.O.N. Clinical Laboratories, Diagnostic Imaging, Nevada Imaging Centers, PBS Anesthesia, Spring Valley Hospital, and UMC Rancho Quick Care.

To the extent necessary,  the Court will take this opportunity to clarify its previous Order (#84).  Plaintiffs had the obligation to disclose the names of all the physicians or health care

1   providers who provided treatment to Plaintiff and produce the medical records or bills from the
2   providers.  Plaintiff further had an obligation to provide a computation of damages prior to the
3   close of discovery.  Plaintiffs failed to disclose certain providers, did not timely produce the
4   medical records, and did not provide a timely computation of damages. Plaintiffs' failure to act
5   diligently in litigating this case is significant.  Plaintiffs lack of diligence however was ameliorated
6   by Defendant accepting the medical authorizations and proceeding to obtain the medical records
7   directly from the providers.  Defendant assumed this responsibility without ever demanding that
8   Plaintiffs produce the medical records or a computation of damages until after the close of
9   discovery.  Defendant was therefore not prejudiced by Plaintiffs' failure to timely produce the
10  medical records because Defendant sought or could have sought the medical records from the
11  health care providers whose identity was disclosed or apparent.  Ultimately, however, Plaintiffs
12  bear the burden of disclosure and production.  The Court will examine each provider in dispute and
13  make a determination as its admissibility.

14  **1.    Catalyst Rx**

15          Defendant argues that Catalyst Rx should be excluded because it was never disclosed prior
16  to the close of discovery.  Plaintiffs however contend that Catalyst Rx's "identity was included in
17  numerous medical records provided to Defendant..." (*See Plaintiff's Brief (#93)* at 6.)  Specifically,
18  Plaintiffs point to the back of Mrs. Jackson's insurance card where Catalyst Rx is listed as the
19  prescription drug provider.  Plaintiffs argue that Catalyst Rx's name on the back of Mrs. Jackson's
20  insurance card combined with the fact that Defendant knew Plaintiff was receiving prescription
21  medication, sufficiently supports that Catalyst Rx was "clearly disclosed."

22          The Court however finds that Catalyst Rx  not disclosed as a health care provider prior to
23  the close of discovery.  Catalyst Rx was never disclosed by Plaintiffs in their initial disclosures or
24  in response to discovery requests.  The Catalyst Rx's name listed on the back of Mrs. Jackson's
25  insurance card does not constitute disclosure of that provider even assuming that Defendant knew
26  Plaintiff was receiving prescription drug coverage.  Because there were no bills or other records
27  making it readily apparent that Catalyst Rx was a health care provider, the Court finds that all
28  testimony, records and bills from Catalyst Rx should be excluded.

1    **2.      CareMeridian, LLC**

2           Both Plaintiffs and Defendant agree that CareMeridian was disclosed prior to the close of

3    discovery.  Defendant however claims that it diligently sought the medical records from

4    CareMeridian, but only received the billing records.  Defendant was told by CareMeridian that

5    additional records need to be obtained from the facility.  Defendant argues that it only became

6    aware of a number of additional records after the close of discovery on August 16, 2011, when

7    Plaintiffs served their supplemental disclosures.  Defendant therefore requests that the medical

8    records and bills from CareMeridian be excluded from evidence.

9           CareMeridian was properly disclosed by Plaintiffs and it appears Defendant promptly

10   requested medical records from this provider.   When Defendant obtained the billing records from

11   CareMeridian, Defendant was placed on notice that additional records from CareMeridian existed.

12   It appears however that Defendant made no effort to obtain those additional records.   Defendant

13   assumed the responsibility of obtaining the medical records, and therefore should have made a

14   follow-up request to the facility for the additional records.  Because Defendant was aware that

15   additional records existed and could have sought to obtain those records, Defendant cannot now

16   claim that the additional records are prejudicial.  The Court will therefore not exclude the

17   testimony, records or bills from CareMeridian LLC.

18   **3.      B.O.N. Clinical Laboratories**

19          Defendant contends that Plaintiffs did not disclose the identity of B.O.N. Clinical

20   Laboratories (hereinafter "B.O.N.") until August 16, 2011, when Plaintiff produced 350 pages of

21   records from CareMeridian.  Plaintiffs however argue that they disclosed B.O.N. as a health care

22   provider on April 26, 2010 when they listed CareMeridian in response to Interrogatory No. 10

23   because B.O.N. was clearly identified as a health care provider in CareMeridian records.  In

24   response, Defendant argues that it was unaware that B.O.N. provided treatment to Plaintiff because

25   Defendant only received the billing records from Care Meridian. Upon review, it is readily apparent

26   that B.O.N. treated Plaintiff during her time at CareMeridian.  (*See Plaintiffs' Brief (#93)* at Exhibit

27   4.)  B.O.N.'s name and address are prominently displayed on several of the CareMeridian records.

28   (*Id.*)  If Defendant had been diligent in requesting all the records from CareMeridian, Defendant

1    would have been known that B.O.N. was a health care provider.  The Court will therefore not

2    exclude bills or records from B.O.N.

3    **4.     Diagnostic Imaging**

4          Neither party disputes that Plaintiffs identified Diagnostic Imaging in their initial FRCP 26

5    disclosures.  However, to date, neither party has obtained relevant records from this provider.

6    Plaintiffs' last computation of damages listed the specials from this provider as "TBD."  Defendant

7    requested records from this provider on April 5, 2010 and May 26, 2010, and the only records

8    obtained consisted of a doppler imaging study from November 17, 2004, which is irrelevant to the

9    case at hand.

10         Despite the disclosure of this health care provider, the Court will exclude any records, bills,

11   or testimony from Diagnostic Imaging dated after November 17, 2004.  Defendant's two attempts

12   to obtain records have failed, and it appears that Plaintiffs have also been unable to obtain any

13   relevant medical records.  The Court will not allow the continuous production of documents;

14   discovery closed on February 14, 2011.   To allow Plaintiffs to use medical records, that have not

15   previously been disclosed, from Nevada Imaging to support their claim at this stage in the litigation

16   would prejudice Defendant and award Plaintiffs for their failure to timely produce the documents.

17   The Court will therefore exclude all testimony, records and bills from Diagnostic Imaging.

18   **5.     Nevada Imaging Centers**

19         Plaintiffs did not disclose the identity of Nevada Imaging Centers.  Defendant became

20   aware of Nevada Imaging because other treatment providers referenced them and provided reports

21   from Nevada Imaging Centers dated October 11, 2014 and January 6, 2009.  Defendant requested

22   records from Nevada Imaging Centers on three separate occasions.  The only documents Defendant

23   received were films from treatment on October 11, 2004 and January 6, 2009.  No additional

24   records were ever obtained despite the fact that Plaintiffs allege in their computation of damages

25   that Plaintiff was treated by Nevada Imaging Centers from December 8, 2008 until June 30, 2011.

26   Defendant further claims that Plaintiffs have not yet provided any records from Nevada Imaging

27   Centers substantiating treatment after January 6, 2009.

28   . . .

1    The Court finds that Defendant acted with diligence in trying to obtain the medical records

2    from Nevada Imaging Centers.  Defendant discovered Nevada Imaging Centers as a health care

3    provider absent disclosure from Plaintiffs, and requested records from this provider on three

4    separate occasions.  The burden of production ultimately falls to Plaintiffs, and because no

5    additional records from this provider have been produced, the Court will exclude from evidence

6    any records, bills or testimony from Nevada Imaging Centers dated after January 6, 2009.

7    **6.    PBS Anesthesia**

8    Defendant argues that PBS Anesthesia ("PBS") should be excluded because this provider

9    was disclosed only after the close of discovery.  Plaintiffs claim that PBS was included in the

10   Spring Valley Hospital records and therefore was disclosed as early as April 26, 2010.  At the

11   hearing on the Motion for Sanctions, Plaintiffs argued that Defendant had notice of PBS because

12   anesthesia records were provided with the Spring Valley Hospital records.  While Defendant

13   acknowledges that some anesthesia records were contained within the Spring Valley Hospital

14   records, Defendant argues that those records did not identify the anesthesia treatment provider as

15   PBS.

16   The Court previously noted that the imposed sanctions were "not intended to exclude the

17   records or bills of medical providers such as anesthesiologists, whose identities and records were

18   disclosed in Plaintiff's hospital records." (# 84 at 13.)  The anesthesia records from Spring Valley

19   Hospital indicate that anesthesia services were rendered, however there was no indication that a

20   health care provider independent of Spring Valley Hospital rendered those services.  *(See Plaintiffs*

21   *Supplemental Brief* (#93) at Exhibit 3.)  The Court reviewed the anesthesia records provided by

22   Plaintiffs, and the name PBS Anesthesia is not listed on any of the records. (*Id.*)  It appears from

23   viewing the records that the Valley Health System rendered the anesthesia services, as the logo for

24   Valley Health Systems is located on the medical record and no other provider is mentioned.  This

25   assumption is further supported by the fact that Spring Valley Hospital billed approximately

26   $20,000 in anesthesia services.   The Court finds that although the anesthesia records were

27   disclosed prior to the close of discovery, the identity of PBS was not.  Defendant had no knowledge

28   that PBS was a health care provider until after the close of discovery and there was no indication in

5

1   the Spring Valley Hospital records that an additional provider rendered the anesthesia services.

2   The Court will therefore exclude all records, bills, and testimony from PBS Anesthesia.

3   **7.    Spring Valley Hospital**

4          Defendant admits that it was aware that Spring Valley Hospital was a health care provider

5   prior to the close of discovery.  Defendant requested records from Spring Valley Hospital on March

6   9, 2010, July 9, 2010 and July 12, 2010.  In response to these requests, Defendant received medical

7   bills for treatment from January 29, 2010 to February 9, 2010, which totaled $421,276.  After the

8   close of discovery, Plaintiffs produced additional records from Spring Valley Hospital for treatment

9   that took place from February 9, 2010 to March 1, 2010, which amounted to an additional $209,528

10  in medical expenses.  Defendant claims that despite its diligence in requesting records from Spring

11  Valley Hospital, the records reflecting an additional $209,528 in medical expenses were never

12  produced or disclosed until after the close of discovery.

13          The Court finds that the Defendant was diligent in seeking medical records from Spring

14  Valley Hospital.  Defendant requested records on three separate occasions and received records

15  totaling over $400,000.  There was no indication that any additional medical records from Spring

16  Valley Hospital existed until Plaintiffs produced them after the close of discovery.  The

17  introduction of the additional records from February 9, 2010 to March 1, 2010 would be prejudicial

18  to the Defendant.  The Court will therefore exclude any billing records which were not obtained or

19  disclosed prior to the close of discovery, including the records from February 9, 2010 to March 1,

20  2010, totaling $209,258 in medical expenses.

21  **8.    UMC Rancho Quick Care**

22          UMC Rancho Quick Care was disclosed by Plaintiff in their initial FRCP 26 disclosures.

23  Defendant requested Plaintiff's treatment records and bills from this provider on July 9, 2010.  In

24  response, Defendant received a letter from the provider indicating that there are no records of

25  treatment for Carol Jackson in their computer system. (*See Defendant's Brief (#100)* at Exhibit D.)

26  Plaintiffs acknowledge that they have also had difficulty obtaining records from Rancho Quick

27  Care.  Although Plaintiffs properly disclosed UMC Rancho Quick Care, no records have been

28  produced by the provider or Plaintiffs.  To allow disclosure of additional medical health records

6

and bills at this stage of the litigation would be prejudicial to Defendant and award Plaintiffs for their lack of diligence in obtaining the records.  The Court will therefore exclude any testimony, records or bills from UMC Rancho Quick Care.  Accordingly,

**IT IS HEREBY ORDERED** that the following evidence is excluded from being introduced at trial:

1.   All testimony, bills or records from Catalyst Rx, UMC Rancho Quick Care, Diagnostic Imaging and PBS Anesthesia;

2.   any records from Nevada Imaging Centers dated after January 6, 2009;  and

3.   any billing records from Spring Valley Hospital which were not obtained or disclosed prior to the close of discovery, including the records from February 9, 2010 to March 1, 2010, totaling $209,258.

DATED this 8th day of June, 2012.

_____
GEORGE FOLEY, JR.
United States Magistrate Judge

7